## DONALD CRERAR ET AL.

v.

## NORMAN WILLIAMS AND HUNTINGTON W. JACKSON, EXECUTORS AND TRUSTEES.

*Wills—Construction of.*

1. A gift for a " free public library " is a gift for a general or public charitable use.

2. In the construction of a will, the intention of the testator to be gathered from the entire will, must govern.

3. A devise of real estate, which by the provisions of the will is to be converted into money, and that money distributed among the devisees, must be treated as a devise of money and not of land. It makes no difference that there had been no sale; equity treats that as done which ought to be done.

4. Void or lapsed legacies of personalty fall into the residuum.

5. A residuary clause in a will is assumed by the law to have been inserted to prevent intestacy, and has that effect.

6. Upon a bill filed alleging certain provisions in a will to be illegal and void, this court adopts as its own, the decree of the trial court dismissing the same for want of equity.

[Opinion filed June 6, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. F. A. STIRTAN, A. W. BROWNE, A. B. JENKS and W. A. CUNNEA, for appellants.

Messrs. JOHN H. MULKEY, JAMES L. HIGH, WILLIAMS, HOLT & WHEELER and LYMAN & JACKSON, for appellees.

GARY, J. The Circuit Court sustained a demurrer to, and dismissed a bill, filed by the appellants, wherein they first recited as descriptive of themselves, that they were " heirs at law of, and next of kin of, one John Crerar," and after-

ward alleged that John Crerar "left no kin of nearer relation than first cousin," and they "are first cousins on the father's side of the said John Crerar." In that character they attack the provisions of his will, as being, in themselves, such as the law will not permit to be carried out. No question is made that the complainants do not sufficiently show how they are cousins, but query? 1 Ch. Pl. 382, 16 Am. Ed.; 1 Dan. Chy. 320; Cruger v. Halliday, 11 Paige, 314.

On the merits, the opinion of Judge Tuley at the Circuit, is adopted as the opinion of this court, as follows:

TULEY, J.    "I have been saved much labor in this case by the able briefs presented by counsel.

In 1889 John Crerar, of this city, died testate, leaving no lineal descendants. His next of kin were cousins, some of whom are the complainants in this case, who would be entitled to share in his estate as heirs at law if he had died intestate. By his will he disposed of a very large fortune, estimated at over three and one-half millions of dollars.

Recognizing the fact that the greater part of his fortune had been accumulated in the city of Chicago, this city, whose unparalleled growth in population, commerce and wealth has created so many large fortunes, he made an effort to return to the source from whence it came, the 'unearned increment,' by bequeathing the great bulk of his vast estate to establish and maintain a 'free public library in the south division of the city of Chicago.'

By the fourth paragraph of his will his entire estate, 'real, personal and mixed,' was given to Norman Williams and H. W. Jackson, his executors and trustees, upon certain specified trusts and conditions, with express directions to sell and dispose of, and convert the same into cash, except as to a few specified articles of personal property. The proceeds of such sale of his property he disposed of, by some thirty-eight separate paragraphs of his will, giving about $800,000 by way of special legacies for charitable or public purposes, and making a few gifts to personal friends, and to some cousins on his mother's side.

By paragraph No. 50 he devotes 'the rest, residue and

remainder' of his estate (over two-thirds of the whole) to the establishment and maintenance of a free public library.

The bill filed in this case, to which there is a demurrer filed (thereby admitting all the facts properly stated), challenges the validity of paragraphs 23, 25, 26, 33, 39, 44, 49 and 50, *i. e.*, of the legacies thereby given.

The 23d directs his silverware, books, pictures and furniture to be distributed among his personal friends.

The 25th gives to the trustees of the Second Presbyterian church of Chicago, for that church, $100,000, so long as the church maintains the principles of the Presbyterian faith.

The 26th gives to the same trustees, $100,000 for the mission schools of the church, the income to be employed in maintaining the schools.

The 33d gives the Chicago Bible Society $25,000.

The 39th gives Norman Williams and H. W. Jackson, in trust for the Chicago Literary Club, the sum of $10,000.

The 44th gives to the same parties $100,000, in trust, to be expended by them in the erection of a colossal statue of Abraham Lincoln.

The 50th paragraph, which disposes of the 'rest and residue' of his estate, is as follows:

'Recognizing the fact that I have been a resident of Chicago since 1862, and that the greater part of my fortune has been accumulated here, and acknowledging with hearty gratitude the kindness which has always been extended to me by my many friends and by my business and social acquaintances and associates, I give, devise and bequeath all the rest, remainder and residue of my estate, both real and personal, for the erection, creation, maintenance and endowment of a free public library, to be called "The John Crerar Library," and to be located in the city of Chicago, Illinois, a preference being given to the south division of the city, inasmuch as the Newberry library will be located in the north division. I direct that my executors and trustees cause an act of incorporation under the laws of Illinois to be procured to carry out the purposes of this bequest, and I request that Norman Williams be made the first president thereof, and that in addition to my executors and trustees the following

named friends of mine will act as a board of directors in such corporation, and aid and assist my executors and trustees therein, namely : Marshall Field, E. W. Blatchford, T. B. Blackstone, Robert T. Lincoln, Henry W. Bishop, Edward G. Mason, Albert Keep, Edson Keith, Simon J. McPherson, John M. Clark and George A. Armour, or their survivors. I desire the building to be tasteful, substantial and fire proof, and that a sufficient fund be reserved over and above the cost of its construction, to provide, maintain and support a library for all time. I desire the books and periodicals selected with a view to create and sustain a healthy, moral and Christian sentiment in the community, and that all nastiness and immorality be excluded. I do not mean by this that there shall not be anything but hymn books and sermons, but I mean that dirty French novels and all skeptical trash and works of a questionable moral tone shall never be found in this library.

'I want its atmosphere that of Christian refinement, and its aim and object the building up of character, and I rest content that the friends I have named will carry out my wishes in these particulars.'

For reasons which will be hereafter apparent in this opinion, I first proceed to consider the objections to the clauses disposing of the 'rest, remainder and residue' of the estate. These are the 49th and 50th paragraphs of the will.

The complainants contend that they are void, and do not legally dispose of such 'rest, remainder and residue.'

First : Because a gift to establish a free public library is not a gift to charitable uses; that such a library would not be a charitable institution; that, therefore, the residuary devise is void as opposed to the rule of law that estates can not be tied up so as to be inalienable—sometimes, but erroneously, styled the 'Rule against Perpetuities.'

It is admitted that a gift to charitable uses is not obnoxious to the rule of law referred to, or to the rule against perpetuities; and as it is of the very nature of a gift to a charitable use that it be inalienable, such a gift being to the public, or to a specified portion or class thereof, the

beneficiaries are necessarily indefinite and incapable of making any transfer or alienation.

The question then is, is a gift for a 'free public library' a gift for a general or public charitable use?

By reason of the great diversity of laws affecting devises and charities in the different States, it is not strange that authorities may be found upon which almost any will which attempts to make the public, or a portion thereof, the beneficiary in a charity, may be attacked, but the first duty of a *nisi prius* court is to ascertain whether the highest court of the State has decided the points in dispute. The law of this State, as found in the statutes, and the decisions of the Supreme Court, if any such are found, must control.

There can be no doubt that under the English decisions, a gift for a 'free public library' would be deemed a gift for charitable uses, as coming within the scope and the spirit of the statute concerning 'charitable uses,' known as the 43d Elizabeth; nor, in my opinion, can there be any doubt but that in the States where the 43d Elizabeth is held to be in force, the great weight of authority is to the same effect.

It can hardly be regarded as an open question in this State, since the decision in the case of Heuser v. Harris, 42 Ill. 425, recognizing the statute of 43d Elizabeth as being in force in this State, as a part of the common law of the State, and holding that all gifts for charities coming within the scope and spirit of the statute, whether within the letter or not, are to be deemed gifts to charitable uses.

It is true that in New York and other States where there has been legislation affecting the rule of the common law, and where it has been held that the statute of 43d Elizabeth is not in force, a less liberal rule as to what is to be considered a gift to charity has been adopted by the courts.

In our State it can not be said, as Prof. Gray in his admirable work on the Rule against Perpetuities, says of New York, 'that in no civilized country is the making of a will so delicate an operation and so likely to fail of success as in New York;' but, upon the contrary, it can be said of Illinois, that there is no State in the Union where the courts

have laid down a more liberal or broader rule as to the interpretation of wills containing gifts to charities, or have more uniformly sustained such gifts. The decisions of the Supreme Court of this State in that regard may be said to be the brightest page in the record of the court.

In the Newberry will case, decided many years since, where there was a gift equal to, if not greater, than the amount here in question, for a free public library, which Mr. Crerar in his will says, 'will be located' in the North Division of Chicago, our Supreme Court assumed that the gift was one for a charitable use, and sustained it as such. Blatchford v. Newberry, 99 Ill. 1.

This is a charity for the education of the people, than which there could be none more deserving.

The contention that a gift for a ' free public library' is not for a charitable institution, is hardly worthy of serious consideration. It is well said by the senior counsel of the defendants that ' such a library, beyond dispute, is a great public blessing to all within its range, rich and poor alike; it will make all of them wiser and better and more useful and powerful for good in all the relations of life; it is pre-eminently an educational institution, because its benefits will extend to a larger body of people than can be reached by any college or other school of learning.'

It is, however, further contended that the gift of the residuary estate by the 49th and 50th paragraphs, considered together, is void because it is obnoxious to the law of perpetuities, in that :

1.  No time is fixed within which the trustees are to turn over the ' rest and residue' to the corporation, directed to be incorporated to administer the same.

2.  That, as the trustee surviving has the power to appoint a trustee in place of one deceased, they may perpetuate the trust and continue the possession and trust beyond lives in being, and twenty-one years thereafter, thereby making the gift obnoxious to the 'rule against perpetuities.'

This might be so if the will could be construed as vesting a legal title or beneficial use in the two trustees, and that they

could hold the same as long as they might desire, but it appears to me that *eo instanti* the death of the testator, the ' rest and residue' became impressed with and devoted to the charity of a free public library, of which the general public were the beneficiaries.    There was no intention to make an intervening estate, or to make the gift to charity depend upon the future event of the trustees turning over this ' rest and residue,' but it is a present and unconditional gift to charity, which vested *eo instanti* the death of the testator, the object and purpose of which charity is specifically pointed out by the will.

It would be a forced construction of the will to say that the testator intended that the trustees should have power to retain the residuary estate from charitable purposes for such a length of time as they might wish.    It was clearly his intention that they should turn over the same to the corporation directed to be incorporated within a reasonable time, and there can be no doubt of the power of a court of chancery, if they failed to do so, to compel them to so act.    The clear intention of the testator was, that the residuary estate should become at his death a gift to charity, and that it should not depend, as to its being a gift, upon the trustees turning over the same, or upon the time when the trustees should so turn over the same.

The familiar rule which controls all others in the interpretation of wills, is that the intention of the testator to be gathered from the entire will, must govern.    Funk v. Eggleston, 92 Ill. 537.

Second:    It is contended that the gift of the residuary estate is void, because the gift was not to any person or corporation in existence, and that no corporation such as contemplated by the will could be formed under the laws of this State.    Our Supreme Court, in the case of Heuser v. Harris, 42 Ill., *supra*, effectually disposes of this contention. In fact, that case and the subsequent cases of Hunt v. Fowler, 121 Ill. 269, and Andrews v. Andrews, 110 Ill. 223, may be said to be conclusive upon the question as to whether paragraphs 49 and 50 constitute a valid gift of the residuary estate to charitable uses.

In Heuser v. Harris the court held that if the legacy is to charity, the court of chancery will consider charity as the substance, and in such cases, if the mode pointed out fails, it will provide another mode by which the charity may take effect, and that 'another principle well established is, that it matters not how uncertain the person or object may be, or whether the persons who are to take are *in esse* or not, or whether the bequest can be carried into exact execution or not; for in all these and the like cases the court will sustain the legacy and give it effect, according to its own principles; and where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can, according to the original purpose, or *cy pres.*'

Mr. Gray, in the work referred to, lays down the rule succinctly in Sec. 607: ' But if the court can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the rule against perpetuities. The mode pointed out by the testator is only one way of carrying out the charitable purposes, and if it can not, with regard to the general charitable intention, be carried out in that way, it will be carried out *cy pres.*

' Thus while the court will allow the fund to be transferred to a corporation not in existence at the time of the gift, if such corporation is not constituted in a reasonable time, it will not recognize the right of such corporation's non-existence to keep the fund locked up until such time as it may please itself to be incorporated. The formation of the corporation is not a condition precedent to the charitable trust, and therefore the trust is not too remote. The cases where charitable gifts to a non-existent corporation or society have been sustained, are numerous.'

Citing some seven English chancery cases, and over twenty American decisions, among which are Inglis v. Sailors' Snug Harbor, 3 Pet. 99, Russell v. Allen, 107 U. S. 163, and from our State reports the case of Heuser v. Har-

ris, 42 Ill. 425, and Andrews v. Andrews, 110 Ill. 223, which are directly in point. And to the Illinois cases there should be added Germain v. Baltes, 113 Ill. 29; Santa Clara Female Academy v. Sullivan, 116 Ill. 375; Hunt v. Fowler, 121 Ill. 269.

The Starkweather case in 72 Ill., cited by complainants, appears to be somewhat in conflict with Heuser v. Harris and cases above cited, but as Heuser v. Harris has been several times affirmed since the Starkweather case, the latter case must be remanded to that large number of cases where the decision was made (as the Supreme Court, in 119 Illinois, 553, says, in overruling a former decision) 'through inadvertence, in the haste induced by the pressure of an overcrowded docket.'

A very earnest contention is made that the power given the trustees by the 49th paragraph of the will, 'to set apart so much of my estate, and invest such sum of money as in their judgment may seem necessary and proper, and to pay from the income thereof all costs, charges and expenses (including the payments mentioned in item 2d) arising from or in the course of the execution and administration of this will and its trusts,' and directing 'any surplus income to be paid over to and devoted to the purposes set forth in item 50th, and when, in the judgment of my said executors and trustees it is proper the principal sum herein provided for shall be paid and devoted to the purposes set forth in item 50th'—that this gives to the trustees a discretion as to what amount shall be set aside, and as to when the same shall go to the residuum, which renders the 50th paragraph void; it being argued that it is impossible to determine what is given or what proportion of the estate is intended to pass by the 50th paragraph.

The 49th and 50th paragraphs, it is contended, should be construed together; and doing so, I am of the opinion that it must be held that the true construction to be given to them is that the testator intended the amount to be set aside by the trustees, to be considered and treated from the beginning, that is, from his death, as part and parcel of

the 'rest and residue' given by the 50th paragraph to charity, and that the amount so set apart was intended to be set apart as a fund to produce, during the administration of the trust by the executors and trustees, an income sufficient to pay the necessary expenses of the administration of the trust. If the 50th paragraph was followed by the 49th, instead of the 49th preceding the 50th, as it does, such intention would be very apparent; and the order in which clauses or paragraphs appear in a will, is not material.

Nor are the 49th and 50th paragraphs, construed together, susceptible of the construction contended for by complainants, to wit, that they give an arbitrary power as to the amount to be set apart, and that the trustees, if they choose, may set apart the larger portion of the estate.

The amount is to be a 'necessary and proper' amount to produce an income to pay costs, charges and expenses, and the payments mentioned in item two of the will, which item two provides for the payment of reasonable fees and compensation to the executors and trustees.

If the trustees in bad faith set apart an amount which is not 'necessary and proper' for the purposes specified, there can be no doubt of the power of a court of chancery, in its jurisdiction over trusts and wills, to interfere. It could also interfere with the trustees paying, or attempting to pay, themselves more than 'reasonable fees and compensation.' Nor can there be any doubt of the power of this court to compel the execution and closing up of this trust should there be any unreasonable delay on the part of the executors and trustees in so doing.

If, as I have held, the 49th and 50th paragraphs effectually dispose of the residuum of the estate, the question arises, if any of the other legacies challenged by complainants are void, and can not pass to the parties or corporations named as legatees, to whom will the same pass— to the residuary legatee, or to the complainants and the other heirs at law?

In other words, do void or lapsed legacies fall into the residuum or go to the heir at law?

Crerar v. Williams.

As before stated, the 4th paragraph commands the executors to convert the entire estate, with the exception of a few articles of personal property, into cash. This would leave nothing to be distributed or paid over by the executors, but personal property.

This is the rule under the familiar doctrine of conversion where, as here, there is an absolute direction by the will, or deed, as the case may be, to convert the property into money; it will be treated and considered as being that kind of property into which it is directed to be converted.

'Money directed to be invested in land descends to the heir of the original beneficiary, or passes under a general description of real property in his will, while land directed to be converted into money goes to the personal representatives, or is included in a residuary bequest of his "personal property."' This effect extends only to those who claim or are entitled to the property under or through the instrument, or directly from or under the author of the instrument. Pomeroy's Equity, Sec. 1166.

A devise of real estate, which, by the provisions of the will is to be converted into money, and that money distributed among the devisees, must be treated as a devise of money and not of land. It makes no difference that there had been no sale; equity treats that as done which ought to be done. Baker v. Copenhagen, 15 Ill. 103; Jennings v. Smith, 29 Ill. 117; Germain v. Baltes, 113 Ill. 29.

If the effect of the 4th paragraph was to make all the gifts or legacies gifts of personalty, then the special legacies, if void, are void legacies of personal property. The law I consider well settled, that void or lapsed legacies of personalty fall into the residuum. The reasons for this rule are many. The courts lean against any construction of a will which will make an estate part testate and part intestate, and will not indulge such a construction, unless such intention of the testator clearly appears. The presumption is that the testator intended to dispose of his entire estate, and intended that the residuary devise should have the effect to catch everything which fails to pass by the other provisions of the will.

'Rest and residue of my estate' means not only what the will purports to dispose of, but also that which the will does not effectually dispose of. The devise of the 'rest and residue' will carry property of which the testator had no knowledge, property acquired after the making of the will, as well as property not legally devised, or which failed to pass under other provisions of the will.

The special legacy is supposed to have been taken from the residuary legatee for the sake of the particular legatee. The presumption is, that the testator did not intend to die intestate as to any of his property, and that he excepted the special legacy out of the residuum only for the benefit of the special legatee. Cambridge v. Raus, 8 Vesey, Jr., 12; King v. Strong, 9 Paige, 94; James v. James, 4 Paige, 115; Mills v. Newberry, 112 Ill. 123. This being the law, it would appear to be no concern of the complainants, if the challenged special legacies are void, and therefore they have no standing in court to challenge their validity.

Only the corporation, to be formed to administer this charity of a free public library as residuary legatee, can challenge such special legacies.

'No next of kin can be said to have any equitable right to his kinsman's estate. As to the superior equities of an heir at law over a devisee under a will, we are unable to perceive them. The law of the land has placed every person's estate wholly under the control of the owner, subject to such final disposition as he may choose to make by his last will and testament, subject to the statutory rights of his widow if he leave one.' Heuser v. Harris, 42 Ill. supra.

It was practically admitted by the senior counsel for the complainant, that if the 50th paragraph has the effect to dispose of the residuum of the estate, the special legacies, if void, would fall into the residuum, unless our statute (Sec. 12, of Chap. 39, R. S.) would have the effect to make void or lapsed legacies go to the heir at law, as intestate estate. The section provides that 'all such estate, both real and personal, as is not devised and bequeathed in the last will

Crerar v. Williams.

and testament of any person, shall be distributed in the same manner as the estate of an intestate.' * * * I do not concur in the construction attempted to be given this section by complainants' solicitors. If the rule of law is that all property sought to be devised by a void or lapsed legacy of personalty falls into the residuum, and passes with the residuum to the residuary legatee, how can it be said that such property 'has not been devised or bequeathed' by the will?

The object of inserting a residuary clause in a will is supposed to be to prevent intestacy as to any part of the testator's estate, and the law is that it does have that effect. If so there is no property 'that has not been devised or bequeathed.' The statute (Sec. 12) could have effect in cases where in the will there was no residuary clause, and where all legacies were special and specific, and some of them or all of them were void or should lapse. There is, therefore, no ground for the contention that the section in question is a statutory repeal by implication of the common law rule applicable to void or lapsed legacies.

In my opinion it is unnecessary for me to pass upon the validity of the various special legacies challenged by complainants. They can not benefit by them, if void, and therefore have no standing in this court to challenge their validity.

The trustees are not seeking any instruction of this court concerning such special legacies. Until they do so (and it is more than probable that they may not deem it necessary to do so), or the residuary legatee attacks them, it will, in my opinion, be improper for the court to pass upon the validity of such special legacies.

The demurrer will be sustained and the bill dismissed as to all the demurring defendants for want of equity at complainant's costs." The decree of the Circuit Court is affirmed.

*Decree affirmed.*

Waterman, P. J., takes no part in this case.