Laurel County Court v. Trustees Laurel Seminary.

CASE 67—PETITION EQUITY—OCTOBER 13.

# Laurel County Court v. Trustees Laurel Seminary.

### APPEAL FROM ROCKCASTLE CIRCUIT COURT.

1. TRUSTEES—SUIT FOR ACCOUNTING. —Where by an act of the Legislature certain persons were created a body corporate with power to sell land which had been donated by the State to a county for educational purposes, and with the proceeds to erect a seminary for learning in the county, the corporation being required by the act to give bond, with authority to the county court to sue the corporators for a failure to discharge their duties, the county court was not confined to an action on the bond, but had the right to sue the corporators in equity for an accounting.

2. ONE OF TWO JOINT TRUSTEES IS NOT RESPONSIBLE FOR THE ACTS OF THE OTHER unless they have expressly agreed to be bound for each other, or unless he has by his voluntary co-operation or connivance enabled the other to accomplish some known object in violation of the trust. And even though they have by the execution of a joint bond agreed to become bound for each other, the one can not be made liable for the acts of the other except in an action upon the bond. He can not be made liable in a suit in equity for an accounting.

3. SAME.—One of the trustees, by giving the other a power of attorney to sell land, does not thereby make himself liable for the proceeds of the land received by the other.

4. SAME.—Even if one of two trustees is liable for the acts of the other, it may well be said that he is liable only as surety, and that, after the lapse of twenty years, the chancellor should not enforce the liability.

5. LIABILITY OF TRUSTEES FOR MONEY SPENT IN MAKING REPAIRS.—The trustees are not liable for money expended by them in good faith in making necessary repairs and improvements upon the trust property.

ALCORN & CRAFT FOR APPELLANT.

1. Defendants are, by the very nature of the case, but trustees for the holders of the legal title; and as donee of the lands for the benefit of the county, the county court has such an interest, standing as it does in place of the State, as authorizes it to sue for correction of abuses of the trust. (Acts 1834, p. 733; Acts 1834–5, p. 281; Acts 1855–6, vol. 2, p. 304; Acts 1859–60, vol. 2, p. 578.)

2. Where there has been a perversion of the trust fund equity will interfere, even though the plaintiff may have a right of action on the bond.

(Perry on Trusts, secs. 744, 742, 419, 424, 426, 452, 453, 438–39, 275 and 850; Thomas v. Hite, 5 B. M., 607; Lewin on Trusts, star pages 265, 316.)

A. H. CLARK, J. H. TINSLEY OF COUNSEL ON SAME SIDE.

W. O. BRADLEY FOR APPELLEES.

1. Under the Act of 1856 the county court might have maintained an action on the bond for any breach of its provisions, or for any willful neglect, but it could not maintain any other form of action. The present action is not instituted under the act, and if maintainable, can be prosecuted alone by the county. (Civil Code, sec. 27; Perry on Trusts, sec. 426.)

2. The county court ordered a suit on the bond and the attorneys had no right to bring any other form of action. Besides, the court had no right to appoint a county attorney when there was no vacancy in the office; nor did the court have power to employ counsel to assist the county attorney. (1 Rev. Stats., chap. 4, art. 3; Gen. Stats., chap. 5, art. 3, sec. 7; Idem, chap. 33, art. 6, sec. 5.)

3. There was no abuse of the trust by appellees. The making of the power of attorney to Brown by the other trustees does not render them liable. (Perry on Trusts, 404, 409, 413, 415–420; Townley v. Sherborne, Bridg. 35.)

4. The county court, having, both before and after Brown's insolvency, recognized his agency, is now estopped to complain.

W. R. RAMSEY ON SAME SIDE. BRIEF NOT IN RECORD.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1834 the Legislature of this State donated to the county of Laurel, for educational purposes, six thousand acres of land, to be located west of the Tennessee river. A power to locate and sell the land was vested in the county court, and under this power that court gave to Jackson and others one-half of the entire land for locating it. After the division of the land between Jackson and the county court, a part of the land allotted to the county in the division was lost by actions instituted under older surveys or patents. In the year 1856, the county court taking no steps, or at least none appearing, to accomplish the purposes of the donation, an act was passed creating the appellees, Farris and Pitman, and one

George Brown, a body corporate, with the power to sell the land and with the proceeds to erect a seminary of learning in the county of Laurel, in the town of London, and the balance, if any, to be applied to educational purposes, such as providing a library and apparatus, etc. The corporation was required to give bond for the faithful discharge of its duties, and the county court authorized to sue the corporators for a failure to discharge the duties imposed by the act. The corporation accepted the trust and the county court invested the corporation with the title, or it derived the power to sell and convey from the act creating the corporation. A bond was executed by the corporators and they proceeded to sell the land by giving a power of attorney to Brown, who was one of the trustees or corporators. They all lived in the county of Laurel, and this land was located west of the Tennessee river. This was in the year 1856. The act further vested in the trustees the power to invest any surplus of these sales of land in bank stock or other profitable investment, the principal to remain as a permanent fund. George P. Brown, one of the trustees who sold this land, died in the year 1868, having sold the greater part of this land, and with a part of the proceeds the trustees, long prior to his death, had purchased a site for the seminary, erected the building, and the school for many years was in a prosperous condition. Brown, it seems, retained some thirty-four hundred dollars of the money derived from the lands in his own hands, and when he died a sum exceeding two thousand dollars remained unaccounted for by him that he had held for many years. He died insolvent, and this action was instituted against Farris, one of the original trustees, and the other appellees as successors of those

who had died, asking for an accounting and a judgment against them for the money unpaid by Brown, the trustee who had died, with the interest. The principal sum they have collected from Brown's estate, but the interest, now exceeding the principal, is the bone of contention between these parties. It is first insisted by the appellees, the court below having dismissed the petition, that the county court had no right to sue for an accounting. There is nothing in this objection. A bond was required to be executed by the trustees, and the act especially authorized the county court to sue for any neglect of duty, and while it is agreed this right to sue applied alone to a suit on the bond, we think a fair interpretation of the act gave to the county court the power to compel an accounting and to sue either at law or in equity, as might be deemed advisable. The appellees insist that the action should have been on the bond, while the appellant maintains that no bond was necessary to make the trustees liable, and a court of equity had the right to compel an accounting and to render a judgment for the balance in their hands, and deny the right of the appellees to force them to an action on the bond. We concur with counsel for the county court that a court of equity could require an account of the acts of these trustees for so long a time, and then render a judgment against them for any balance that might be found due, without reference to the bond. The appellees, for defense, insist that they are not liable for the failure of Brown to pay this money over; that it was a breach of duty on his part, and as co-trustees they are not liable for his acts, and if liable, they are only responsible as sureties, and after the lapse of more than twenty

years the claim has become so stale the chancellor will not enforce it, and the statute of limitation applies.

Mr. Perry, in his work on Trusts, says the general rule is that one trustee shall not be responsible or liable for the acts or default of his co-trustee, and he cites the case of Townley v. Sherborne, Bridg., 35, 2 White & Tudor's Leading Cases, Eq. (6th Ed.) 960, where lands were conveyed to two or more upon trust and one received all the profits, his co-trustee should not be charged in chancery for the receipts of him so dying or deceased, unless some practice, fraud or evil dealing appear to have been in them to the prejudice of the trust. (Perry on Trusts, sec. 415.)

Judge Story, in his work on Equity Jurisprudence, sec. 1280, says, the general rule is that they are responsible only for their own acts, and not for the acts of each other, unless they have expressly agreed to be bound for each other, or they have, by their voluntary co-operation or connivance, enabled one or more to accomplish some known object in violation of the trust. It may be argued that the trustees did agree to become bound for each other in this case by the execution of the bond to the county court. If so, the bond itself is not only the evidence of the agreement, but the action to charge the co-trustee must be on the bond, for upon its terms he agrees to stand. It constitutes the basis of recovery. In this case it is not pretended that the co-trustee has been sued on the bond, and his liability rests upon purely equitable grounds. As to the sale of the land under the power of attorney, it has been held in some cases that if trustees join in executing a power of sale and one receives the money, all will be responsible if lost by the one receiving it; but Mr. Perry says this ignores the rule that

a power must be strictly executed by all the persons to whom it is given, and if a trustee joins in the power but receives none of the money, omits no duty, and does no act tending to a breach of the trust, he will not be held for a loss occasioned by a breach of trust by other trustees. The great preponderance of authority is that a sale under a power is not different from the execution of a receipt for the trust moneys. (Perry on Trusts, sec. 420.)

Brown, the trustee who collected this money, was regarded as perfectly solvent. The reports of settlement to the county court showed that he held this money in his hands, and it was as much the duty of one trustee as another to see that this money was invested. Brown had the possession of this fund, and when you attempt to make Farris liable for Brown's defalcation after the lapse of twenty years from the breach, with a full knowledge on the part of the county court that Brown had this fund, it seems to us the chancellor, in a case like this, should hesitate before fixing a responsibility on one who has derived no benefit from the transaction. This entire record shows that it was a holding by Brown with the consent of the beneficiary, fully competent to act, and with the consent of the co-trustees. All the money collected has been accounted for, with the interest. The principal retained by Brown has been paid, and it is the interest now sought to be collected. It may well be said, in a case like this, and particularly in a court of equity, where you attempt to make a co-trustee liable for the acts of another trustee, that the former stands in the attitude of a surety, and no such stale claim should be enforced.

There was money expended by these trustees, after the war, in repairing the buildings and erecting dormitories

for the benefit of the institution, and it is now complained that this expenditure was improper. The buildings had been used by the soldiers and become much dilapidated, and when in this condition the repairs and improvements were made necessary, and the money having been expended in good faith (and a beneficial expenditure), we see no reason for holding these trustees responsible. In fact these trustees, and particularly Farris, when the county court for the period of twenty years had neglected to reap the benefit from this liberal donation made by the State, took charge of the fund and, as the proof conduces to show, have succeeded in building up an educational institution commensurate with the gift, and have shown themselves benefactors instead of plunderers.

The judgment should be affirmed.