Marshall, C. J.
 

 The demurrer is general and
 

 challenges the sufficiency of the answer as a defense. In argument two grounds are urged: First, that the statutes in question are of a general nature and do not have uniform operation throughout the state, in violation of Section 26, Article II, of the Constitution; second, that they are laws conferring corporate power by special act, in violation of Section 1, Article XIII, of the Constitution.
 

 The conclusions we have reached on the first of these grounds make it unnecessary to consider the second. Section 26 of Article II provides, in part:
 

 
 *300
 
 “All laws, of a general nature, shall have a uniform operation throughout the state.”
 

 This proceeding challenges the constitutional validity of Sections 2434-1 to 2434-4, inclusive, General Code, enacted April 6, 1923, Sections 14993 to 15005, inclusive, and Section 15060, General Code.
 

 Section 2434-1 provides: “When in their opinion it is necessary, the commissioners of any county wherein there is provided and maintained, through taxation, a county library system for the free use of all residents of such county, the control of which is vested by law in a board of trustees constituted, empowered, governed and controlled by and in pursuance to Sections 14993 to 15005, inclusive, and Section 15060 of the General Code of Ohio, shall have the power to borrow a sum not to exceed two and one-half million ($2,500,000.00) dollars and issue the bonds of such county therefor to construct and furnish a suitable library building for the use of such library system so serving such county. Such bonds shall bear interest at a rate not to exceed six per cent (6%) per annum, and shall be sold in the manner, form and maturities provided by law.”
 

 Section 2434-2 provides, in part: “No money shall be borrowed or bonds issued under this act without first submitting to the voters of the county the question whether such bonds shall be issued for the construction and furnishing of a county library building.”
 

 . Section 2434-3 provides: “Said county commissioners shall have the power to acquire by purchase or appropriation any property, real or personal, suitable and necessary for such library building.”
 

 Section 2434-4 provides: “Upon the completion
 
 *301
 
 and furnishing of such building the said county commissioners and the said library trustees are empowered to enter into a suitable contract concerning and governing the use, control, care and management of the said county library building.”
 

 It will be seen that Section 2434-1 of the Act of 1923 (110 Ohio Laws, 242), makes the entire act apply only in a county where a county library system has been established and where it is governed and controlled pursuant to Sections 14993 to 15005, inclusive, and Section 15060, General Code. It therefore becomes necessary to examine those sections.
 

 Section 14993 provides, in part: “Each and every resident of the county within which is situated any city of the first grade of the first class, having therein established a public library, shall be entitled to the free use of such library,” etc.
 

 Section 14994 defines the powers of the trustees of a public library in cities of the first grade of the first class. Section 14995 provides for levy of taxes for the maintenance of a public library in cities of the first grade of the first class. Sections 14996 and 14997 provide for the expenditure of money for library purposes in any city of the first grade of the first class situate in any county having a board of control. Section 14998 provides for the qualifications of members of the board of trustees. Sections 14999 to 15005, inclusive, provide other details for the government and control of county libraries in counties having a city of the first grade of the first class. Section 15060 makes special provision for the appointment of trustees of a public library in cities of the first grade of the first class not applicable to any other county.
 

 
 *302
 
 While the prayer of the petition is directed principally to the acts authorized by the Act of April 6,1923, it is apparent that those statutes depend for their validity upon the validity of Sections 14993 to 15005, inclusive, and 15060, and that all must stand or fall together. These statutes clearly were intended to, and in fact do, apply only to Hamilton county. At the time the Act of April 21, 1898, was passed, Cincinnati was the only city in the state of Ohio in the first grade of the first class.
 

 It must be first determined whether these laws are of a general nature. That they are seems so patent and obvious that little discussion should be necessary. Public libraries are a part of the educational facilities of the state, and, while not so generally employed or so readily accessible as schools, if they constitute a proper element of governmental activity they must be as applicable to every community as to any one community. Knowledge is neither more nor less necessary or expedient in the populous centers than in the sparsely settled rural counties. The earliest legislation on this subject treated libraries as a part of the common school system. The Act of March 14, 1853 (51 Ohio Laws, 447), empowered the school commissioner of the state to purchase books and establish libraries in each school district, and provided that every family in the district should have the right to the use of books therefrom, whether or not they had children attending the schools, and that libraries should be kept open without regard to the sessions of the schools. Pursuant to that authority the school commissioner did establish libraries throughout the school districts of the state. Though that system
 
 *303
 
 in time fell into disuse, there is still much general legislation on the statute hooks of Ohio pertaining to libraries established and supported by public funds. Sections 4004 to 4018, General Code, authorize municipalities to establish municipal libraries. Sections 7631 to 7643, inclusive, authorize boards of education, in school districts generally, to establish and maintain school libraries. The board of education of the city of Cincinnati at first operated under the general law, and with a fair degree of consistency continued to operate under the general law until the Special Act of April 21, 1898 (93 Ohio Laws, 191), which by its terms was made applicable only to cities of the first grade of the first class, but immediately upon the passage of that act proceeded to have trustees appointed, as therein provided, and have so operated since that date, levying and collecting taxes upon all the property of the county, and operating and maintaining the library as a county wide agency.
 

 Sections 14993 to 15005, inclusive, have always been regarded as having application only to Hamilton county. This fact has been so fully recognized that the title of those various sections indicates that they are only applicable to Cincinnati. They could not have any possible application to any other county or city. The Act of April 6,1923, specifically refers to the former enactments, and that act must necessarily have application only to Hamilton county. Counsel appearing for the commissioners and the sinking fund trustees frankly admit that that act is essentially local and special in its nature, and claim that it cannot be a law of a general nature. A proper deference to counsel who appear in the case
 
 *304
 
 requires that we give some notice to this claim, and that there should be some discussion of the authorities. The pronouncements of this court in the past have not always been consistent or harmonious. Without any change in the language of Section 26 of Article II, the changing personnel of this court and the changing conditions of human progress have brought fluctuations in decisions which must be accounted for partly on the theory of a different trend of thought and a different attitude toward local control of local conditions. It would be futile to attempt to reconcile all of them, for the reason that they are wholly irreconcilable. In the course of these decisions, however, certain rules and principles have been declared which may be said to form the basis of a test of what constitutes' legislation of a general nature.
 

 In
 
 Hixson
 
 v.
 
 Burson,
 
 54 Ohio St., 470, at page 481 of the opinion, 43 N. E., 1000, 1002, it is said: “If the subject does or may exist in, and affect the people of, every county, in the state, it is of a general nature. ’ ’
 

 That case pertained to construction of highways, and the act in question there was limited to counties having a population between 35,190 and 35,200,. It was held that highways are not local and that any act pertaining to highways must necessarily be regarded as of a general nature. In so deciding the court overruled the case of
 
 State, ex rel. Hibbs,
 
 v.
 
 Commissioners,
 
 35 Ohio St., 458. The
 
 Hibbs case
 
 was decided in 1880, and the act in question gave authority to the commissioners of Franklin county to levy a special tax for the purpose of improving a county road. It was stated in
 
 Hixson
 
 v.
 
 Burson,
 
 54
 
 *305
 
 Ohio St., 481, 43 N. E., 1001: “Time and changed conditions may make it necessary to enlarge and extend the construction of the scope of Section 26 of the Second Article of the Constitution,” etc. This prediction has been verified, and there is a tendency on the part of the Legislature, and on the part of this court, to restrict the range of local legislation and to require legislation, to be in general terms, and therefore applicable to the entire state, in all cases where the subject-matter is of such character as to be given general application throughout the state.
 

 In
 
 State
 
 v.
 
 Powers,
 
 38 Ohio St., 54, this court held that laws regulating the organization and management of common schools must have a uniform operation throughout the state. Notwithstanding this clear-cut decision the case of
 
 State, ex rel. Atty. Gen.,
 
 v.
 
 Shearer,
 
 46 Ohio St., 275, 20 N. E., 335, decided only seven years after the
 
 Powers case,
 
 overruled the earlier case and held that the formation of a special school district by special act was not in conflict with Section 26, Article II. In 1902 this court decided the case of
 
 State, ex rel. Wirsch,
 
 v.
 
 Spellmire,
 
 67 Ohio St., 77, 65 N. E., 619, and again held that the subject-matter of schools, including school districts and establishing and changing the same, is of a general nature, overruling the
 
 Shearer case
 
 and reaffirming the
 
 Powers case.
 
 During the same term this court decided the case of
 
 Sadler, a Taxpayer,
 
 v.
 
 Porter,
 
 67 Ohio St., 531, 67 N. E., 1101, and while that was a journal entry decision it was rendered upon the authority of the
 
 Spellmire case
 
 and
 
 City of Cincinnati
 
 v.
 
 Trustees of Cincinnati Hospital,
 
 66 Ohio St., 440, 64 N. E., 420. The
 
 Sadler
 
 
 *306
 

 case
 
 not being fully reported, it is difficult to determine definitely the range of that decision, but it is quite certain that it involved the validity of Section 14999 (95 Ohio Laws, 902), and there can be no doubt that that statute was held to be unconstitutional on the ground that it had application only to the school district of the city of Cincinnati.
 

 Plaintiffs in error have cited the case of
 
 City of Cincinnati
 
 v.
 
 Taft,
 
 63 Ohio St., 141, 51 N. E., 63. That decision brought in question the validity of an act of April 25, 1898 (93 Ohio Laws, 672), authorizing the city of Cincinnati to renew and extend time of payment of certain bonds theretofore issued by the city. The act by its terms conferred upon the trustees of a railway, constructed under the act of 1869, the power to renew and extend time of payment of certain bonds theretofore issued by the city. The act by its terms conferred upon the trustees of a railway, constructed under the act of 1869, the power to renew and extend time of payment of such bonds. It was held that, inasmuch as the act of 1869 had been adjudged by this court to be constitutionally valid, and the bonds had been sold and improvements made, the former decision would be followed. The former decision referred to was
 
 Walker, City Solicitor,
 
 v.
 
 City of Cincinnati,
 
 21 Ohio St., 14, 8 Am. Rep., 24. In that case no question of unconstitutionality was argued. The decision of the court was limited to the questions which were urged. The earlier decision therefore became a rule of property. It was particularly stated in the opinion in the
 
 Taft case
 
 that it was decided not merely by the application of the maxim
 
 stare decisis,
 
 but within the rules which require the stability of
 
 *307
 
 judgments. It was also strongly intimated in the last paragraph of the opinion in that case that the court was not impressed by the correctness of the decision of
 
 Walker
 
 v.
 
 Cincinnati.
 
 In
 
 Cline
 
 v.
 
 Martin,
 
 94 Ohio St., 420, 115 N. E., 37, the county school district law was under interpretation and it was urged that it was in violation of Section 26 of Article II. It was held to be of a general nature and to have uniform operation throughout the state, because “it operates upon every person brought within the relation and circumstances provided for, and in every locality where the condition exists.” In
 
 City of Cincinnati
 
 v.
 
 Steinkamp, Trustee,
 
 54 Ohio St., 284, 43 N. E., 490, it was held that an act to regulate construction of buildings within any city of the first class and first grade was invalid because it was a law of a general nature and did not have uniform operation throughout the state.
 

 Without attempting to review all of the former decisions of this court in applying Section 26 of Article II, it may be stated that, while certain of the earlier cases cannot be reconciled, the majority of the cases, and especially those of later years, have been quite strict in requiring legislation, the subject-matter of which is general in its nature, to be given general application. Laws were held to be of a general nature in the following cases:
 
 Kelley
 
 v.
 
 State,
 
 6 Ohio St., 270, relating to the jurisdiction of courts of common pleas;
 
 State, ex rel.,
 
 v.
 
 Ellet,
 
 47 Ohio St., 90, 23 N. E., 931, 21 Am. St. Rep., 772, relating to deposits of county funds;
 
 State, ex rel. Infirmary Directors,
 
 v.
 
 Bargus,
 
 53 Ohio St., 94, 41 N. E., 245, 53 Am. St. Rep., 628, relating to public support of the poor;
 
 State, ex rel.,
 
 v.
 
 Davis,
 
 55 Ohio St., 15, 44
 
 *308
 
 N. E., 511, relating to construction of highway bridges;
 
 Gaylord
 
 v.
 
 Hubbard, Treas.,
 
 56 Ohio St., 25, 46 N. E., 66, relating to boards of equalization;
 
 Commissioners of Hamilton County
 
 v.
 
 Rosche Bros.,
 
 50 Ohio St., 103, 33 N. E., 408, 19 L. R. A., 584, 40 Am. St. Rep., 653, relating to refund of taxes;
 
 Platt
 
 v.
 
 Craig,
 
 66 Ohio St., 75, 63 N. E., 594, relating to bridges;
 
 State, ex rel. Wilmot,
 
 v.
 
 Buckley,
 
 60 Ohio St., 273, 54 N. E., 272, relating to election laws;
 
 Silberman
 
 v.
 
 Hay,
 
 59 Ohio St., 582, 53 N. E., 258, 44 L. R. A., 264, relating to the right of trial by jury. We have already referred to several cases relating to schools. It is difficult to see how an act relating to a public library can be of any different character from those referred to in the various cases herein-before discussed.
 

 Upon reason and principle, as well as upon precedent and the authority of the foregoing cases, the conclusion is irresistible that the Act of April 6, 1923, is a special act, and that the subject-matter is general in character. It is conceded that it does not have uniform operation throughout the state. Its provisions are therefore violative of Section 26 of Article II of the Constitution, and the decisions of the lower courts must be affirmed.
 

 Judgment affirmed.
 

 Kinkade, Robinson, Jones, Matthias and Day, JJ., concur.