## Board of Trustees, Newport Public Library, v. City of Newport.

March 13, 1945.

Carl H. Ebert, Walter J. Burke, and Wm. J. Heringer for appellee.

Samuel M. Wilson, amicus curiae for Lexington Public Library.

Anna H. Settle, amicus curiae for Kentucky Library Ass'n.

Wm. A. Minihan, amicus curiae for City of Lexington.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

The question is whether the General Assembly may require a municipality to levy a tax, within minimum and maximum limits, to support a public library owned and being operated by the municipality. It is conceded the Legislature has such power, unless inhibited by Section 181 of the Constitution, as amended in the year 1903. The section, in so far as pertinent, reads: ''The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes. * * *''

The act under consideration was passed by the General Assembly in its regular session of 1944, and is compiled in KRS 173.300 to 173.410, inclusive.

Appellee is a city of the second class, and instituted the action under Section 639a—1 to 639a—5 of the Civil Code of Practice, seeking a declaration of its rights: contending that Sections 2, 7, and 11 of the act (KRS 173.310, 173.360, and 173.400, respectively) contravene the section of the Constitution quoted above. Therefore, we will discuss the act as if it were applicable to second-class cities alone, although our remarks apply with equal force to all ''governmental units'' covered by the act. In abbreviated terms, and in its application to second-class cities, the act provides: That a city with a minimum assessed valuation of five million dollars may provide library service for its inhabitants according to any of four methods, one of which was the method adopted by the City of Newport to create the Newport Public Library in the year 1896. After the creation of the library service by one of the approved methods, the legislative body of the city is mandatorily required to levy a tax of not less than five cents (5c) nor more than fifteen cents (15c) on each one hundred dollars ($100) worth of property assessed for taxation by the city. Every existing public library established under provisions of State law in effect previous to the passage of the 1944 Act must operate under the authority of the 1944 Act.

Section 181 of the Constitution has been construed by this court in innumerable cases. In each instance we have held that the inhibition upon the power of the Legislature to levy a tax for a municipality applies to

levies for local purposes, and not to matters with which the public at large is concerned. In this connection it has been held that the inhibition applies in respect to levies for fire departments, McDonald v. City of Louisville, 113 Ky. 425, 68. S. W. 413, 24 Ky. Law Rep. 271; Campbell v. Board of Trustees of Firemen's Pension Fund of Louisville, 235 Ky. 383, 31 S. W. 2d 620; and waterworks, Kenton Water Co. v. City of Covington, 156 Ky. 569, 161 S. W. 988. On the other hand, it has been held that that section is not applicable to: County farm bureaus, Hendrickson v. Taylor County Farm Bureau, 196 Ky. 75, 244 S. W. 82; police departments, Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. 2d 606; Duke v. Boyd County, 225 Ky. 112, 7 S. W. 2d 839; payment of coroners' fees, Whittenberg v. City of Louisville, 238 Ky. 117, 36 S. W. 2d 853; homes for dependent and delinquent children, Fox v. Board of Louisville and Jefferson County Children's Home, 244 Ky. 1, 50 S. W. 2d 67; tubercular sanatoriums, District Board of Tuberculosis Sanitarium Trustees for Fayette County v. Lexington, 227 Ky. 7, 12 S. W. 2d 348; schools, City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411; and junior colleges, Pollitt v. Lewis; 269 Ky. 680, 108 S. W. 2d 671, 113 A. L. R. 691. The distinction is well drawn in Board of Trustees of Policemen's Pension Fund v. Schupp, supra [223 Ky. 269, 3 S. W. 2d 609], wherein it is said: "It is evident from a reading of section 181 that the makers of our Constitution realized and provided for the twofold character of municipal corporations. One of these is purely municipal, affecting only local matters of concern to no one in particular except the inhabitants of the particular municipality. The other is its governmental character, in which the state at large is concerned. This twofold character is well pointed out in 19 R. C. L. p. 697, sec. 9, and in 43 C. J. p. 179, sec 178. The general public of the state is not interested in the imposition of taxes for purely municipal purposes, and the General Assembly is forbidden to levy such taxes, but the general public is interested in the maintenance of order in all municipalities of the commonwealth, and the General Assembly may by general laws, require municipal corporations to take such steps and to impose such taxes as will provide for the maintenance of order."

It is true, the act under consideration in that case was merely an enabling act and contained no mandatory provision. But the principles above quoted are well established in this jurisdiction. The decision in this case, therefore, turns upon a determination of the category, i. e., local or governmental, into which public libraries must be placed.

At the outset, it may be helpful to determine the respect to be accorded certain language contained in Alvey v. Brigham et al, 286 Ky. 610, 150 S. W. 2d 935, 936, 939, 135 A. L. R. 1024. In the course of the opinion it is said: "We do not think this court, in the Thompson case, supra (City of Lexington v. Thompson, 113 Ky. 540, 68 S. W. 477, 480, 24 Ky. Law Rep. 384, 57 L. R. A. 775, 101 Am. St. Rep. 361), committed itself on the proposition that the maintenance of the library in question here is proprietary, though we may say that following the Campbell case, supra (Campbell v. Board of Trustees of Firemen's Pension Fund, 235 Ky. 383, 31 S. W. 2d 620), *it may and should be free from state interference.* There is no evidence here of attempt on the part of the state to dictate, control or interfere. Its acts merely delegate governmental powers." (Our emphasis.)

It is obvious that the words we have emphasized have no rightful place in the opinion, and that the question of the right of the Legislature to dictate to cities in respect to public libraries was not presented in that case. The statement, then, that the library in question "may and should be free from state interference" is obiter dictum, or an utterance of the writer of the opinion in turning aside, for the time, from the question presented. This utterance, therefore, cannot be considered as a precedent in determining the question now under consideration.

With that opinion disposed of, we are free to examine the question upon basic principles, and in the light of other cases bearing upon the question.

It seems that the best approach to the subject would be to examine the function of a public library; and then to determine the scope of its function: that is to say, whether its function inures solely to the benefit of the city in which it is situate, or whether it inures to the

benefit of the public at large. At this point attention should be called to the fact that, even though the local community may benefit to a greater extent than the public in general, yet if the service inures to the benefit of the State at large to any appreciable extent, its control rests with the Legislature and does not come within the purview of Section 181 of the Constitution. This principle was established clearly in District Board of Tuberculosis Sanitarium Trustees for Fayette County v. Lexington, supra [227 Ky. 7, 12 S. W. 2d 351], wherein the Court said: ''As construed by this court, the restrictions thus imposed (by Section 181 of the Constitution) do not apply to matters of state-wide importance in which there is also a local interest, but do apply to matters of purely local concern, * * *.''

Counsel for appellee takes the position that a public library is solely a place of amusement where its patrons indulge in moments of relaxation and enjoyment— ''a kind of enjoyment to pass away the time in a realm separate and apart from the realities and drab sameness of everyday existence.'' It may be that some of the patrons experience this character of enjoyment upon their visitations to public libraries; and for them such institutions, indeed, are places wherein they may relax and be relieved of the ''cares that infest the day.'', But such cannot be said to be idle amusement; on the contrary, it is one that better fits the individual to be of help to his neighbor, city, state, and nation. His contact with his fellowmen spreads knowledge, helps lift the ban of ignorance, and stimulates a desire on the part of his associates to improve their own minds, thus advancing the cultural status of the community. But, irrespective of the beneficial effect to the public of this character of its use, we are not willing to concede that such is the sole function of a public library—it provides for the youth a medium for extra curricular research to supplement the basic principles taught in the classroom; it provides a facility for those to continue their education who, perforce, have abandoned attendance upon the public schools; and it is an institution which permits the adult, even though he may have completed the highest prescribed course of education, to continue his studies and improve his culture. In either event, the library raises the standard of knowledge and education. It may be likened to a mirror wherein, delving, one may

see a reflection of the past. Were we not permitted to gaze into the future through this mirror of the past, our civilization long since would have marked its own time by being required to investigate anew each approach to a particular field of investigation or line of thought, and actually to blunder by the repetition of mistakes so clearly demonstrated in the written records. Each individual research serves as an enlightenment to the public at large. The institution which affords this opportunity is educational in its every aspect. This conclusion is supported by previous decisions of this court, one of which is Ramsey v. City of Shelbyville, 119 Ky. 180, 83 S. W. 116, 1136, 26 Ky. Law Rep. 1102, 68 L. R. A. 300. The Legislature of Kentucky, as early as the year 1856, described the purchase of a library as an educational purpose. See Laurel County Court v. Trustees of Laurel County Seminary, 93 Ky. 379, 20 S. W. 258, 14 Ky. Law Rep. 412. Other courts, both federal and state, recognize this characterization of public libraries. Proprietors of Social Law Library of Boston v. United States, D. C., 21 F. Supp. 462, affirmed by the Circuit Court of Appeals, 1 Cir., in 102 F. 2d 481; Kibbe v. City of Rochester, D. C., 57 F. 2d 542; In re Arnot's Estate, 145 App. Div. 708, 130 N. Y. S. 499, Donohugh's Appeal, 86 Pa. 306; Drury v. Inhabitants of Natick, 10 Allen, Mass., 169; Crerar v. Williams, 44 Ill. App. 497; Id., 145 Ill. 625, 34 N. E. 467, 21 L. R. A. 454; Maynard v. Woodward, 36 Mich. 423; School City of Marion v. Forrest, 168 Ind. 94, 78 N. E. 187; State v. City of St. Louis, 318 Mo. 870, 2 S. W. 2d 713; and Brown v. State, 120 Ohio St. 297, 166 N. E. 214. We have found no authority to the contrary.

Having arrived at the conclusion that a public library is an educational institution, there remains the relatively simple task of placing it into its proper category in respect to local or public concern. In 47 Am. Jur., Sec. 6. pp. 299 and 300, the writer says: "* * * it is now recognized that education is a function of government. Such function or duty is not regarded as a local matter, but as a state governmental duty, and the public-school system is now a department of the government."

The same idea is incorporated in 56 C. J., sec. 29, pp. 177 and 178. This court, in Jeffries v. Board of Trustees of Columbia Graded Common School, 135 Ky. 488, 122 S. W. 813; Commonwealth v. Burnett, 237 Ky.

473, 35 S. W. 2d 857; and City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411, has characterized education as a matter of state concern. In Board of Trustees of Policemen's Pension Fund v. Schupp, supra, the court said: "The general public is interested in the education of all the people of the state, * * *."

To the same effect is Warley v. Board of Park Com'rs et al., 233 Ky. 688, 26 S. W. 2d 554. In Columbia Trust Co. v. Lincoln Institute of Kentucky, 138 Ky. 804, 129 S. W. 113, 116, 29 L. R. A., N. S., 53, the court said: "It is not doubted that the Legislature, under the police power, may regulate education in many respects."

In Zoeller v. State Board of Agriculture, 163 Ky. 466, 173 S. W. 1143, and in Rhea, State Treasurer, v. Newman, 153 Ky. 604, 156 S. W. 154, the State Fair was declared to be an educational institution and on that account an arm of the State government; and finally, in Hendrickson, County Judge, v. Taylor County Farm Bureau, 196 Ky. 75, 244 S. W. 82, the court pronounced county farm bureaus to be designed for the promotion and advancement of public education, and, consequently, subject to the plenary control of the Legislature rather than the local county government. In the face of this array of authorities, we are impelled to conclude that public libraries are public institutions which the Legislature may control.

But it is argued that the act under consideration "localized itself" by the provisions of KRS 173.380, which reads: "Every library established or maintained under KRS 173.300 to 173.390 shall be free for the use of the inhabitants of the governmental unit in which it is located, subject to such reasonable rules and regulations the trustees find necessary."

The public benefit of the project is the lifting of the standard of education, and this benefit is not circumscribed by a limitation upon free use of the facilities afforded by the institution. If persons living outside of the community which is required to maintain the library desire individual benefit, it is no more than just that they contribute to the facility. But such outside financial assistance does not detract from the benefit which inures to the public in general. It is a well known fact that school districts charge tuition to students living without the territorial boundaries of the district; but this fact

does not change the character of the service rendered by the schools. In like tenor, the provision in respect to the free use of the library does not change the character of the benefit which the public derives from the library.

It is next argued that the act is discriminatory and unconstitutional, because its provisions are mandatory in respect to cities which have heretofore enabled themselves of the privilege of acquiring libraries, whereas the act is merely enabling to those who have not heretofore seen fit to establish such an institution. This argument is not sound. It is true the act does not require a city to establish a library, but if it should exercise its discretion to do so, the mandatory provisions are applicable to it to the same extent they are to libraries in existence at the time of the effective date of the act. No distinction or discrimination is made in respect to the date of establishment of a library.

Finally, it is argued that the act is discriminatory, because it is applicable to governmental units divided upon an unreasonable classification. The basis of this contention is that the act applies only to cities containing property of the assessed value of five million dollars or more, and that there is no reasonable basis for such a classification. But we think that the classification is reasonable, and does not contravene Section 59 or 60 of the Constitution, even when read in connection with Section 156 of the same instrument. Section 59 reads:

"The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:

\* \* \* \* \*

"(Subsection 15): to authorize or to regulate the levy, the assessment or the collection of taxes, or to give any indulgence or discharge to any assessor or collector of taxes, or to his sureties."

Section 60, in so far as pertinent, recites: "The General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county; \* \* \*."

Section 156 reads: "The cities and towns of this

Commonwealth, for the purposes of their organization and government, shall be divided into six classes. The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. * * *''

In Hager, State Auditor, v. Walker et al., 128 Ky. 1, 107 S. W. 254, 258, 32 Ky. Law Rep. 748, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238, the court said: ''The cities and towns were divided into classes distinctly for the purpose of dealing with their local affairs. The classification was not intended for any other purpose, or designed to influence or control legislation for state purposes.''

In Withers v. Board of Drainage Com'rs of Webster County, 270 Ky. 732, 110 S. W. 2d 664, it is said: ''The principal ground of attack on the 1928 and 1932 acts is that they offend sections 59 and 60 of our Constitution forbidding the enactment of special and local acts. It is true that the foregoing sections of our Constitution, like the Fourteenth Amendment to the Federal Constitution, do not forbid classification based on reasonable and natural distinctions, Jones v. Russell, 224 Ky. 390, 6. S. W. 2d 460, * * *.''

We have demonstrated that the subject covered by the act in question does not deal with ''local affairs'' of municipalities; therefore the inhibitions of Sections 59 and 60 of the Constitution in respect to special and local enactments are not rendered applicable by the exclusion from the provisions of the act of all cities containing less than five million dollars worth of assessed property, unless the classification is arbitrary or has no relation to the provisions of the Act. In our opinion, the classification complained of has a direct relation to the subject matter, because the Legislature, no doubt, reasoned that a city having less than five million dollars worth of assessed property could not maintain a library by the levy of the minimum rate provided in the act, and it would have been a futile gesture to make the act applicable to such cities. The act does not deprive these communities of the privilege of maintaining libraries in conjunction with the governments of other contiguous territories; indeed, it expressly provides that they may do so. The only prohibition implied in the Act is that

they alone may not enter into a project which it was thought by the Legislature they alone could not maintain.

Our attention is called to the fact that the minimum levy under the provisions of the act will yield revenues greatly in excess of judicious expenditures in maintaining various public libraries already in existence. In this connection it is said that the public library in Newport, which has been in existence for forty-nine years, is being maintained adequately upon an appropriation of eight thousand dollars per annum; whereas, under the provisions of the act, the minimum annual levy will produce twelve thousand five hundred dollars ($12,500). In like manner, the public library in the City of Lexington, amicus curiae herein, which library was established in the year 1903, is being maintained adequately upon an annual appropriation of twelve thousand five hundred seventy dollars ($12,570); whereas, the minimum annual levy under the provisions of the act will produce the approximate sum of twenty six thousand dollars ($26,000). We would not lightly pass over this criticism, if it were a matter the courts could take into consideration in determining the validity of an act of the Legislature. But we have no power to question the propriety, wisdom, or expediency of legislation. Any unjust provision of the act can be remedied only by the General Assembly. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828; Henry Bickel Co. v. City of Louisville, 282 Ky. 38, 137 S. W. 2d 717, 127 A. L. R. 1084.

Since the chancellor was of the opinion that the City of Newport is acting in its proprietary capacity in the operation of its public library, and that for this reason the act in question is violative of Section 181 of the Constitution, the judgment is reversed, with directions that another be entered in conformity with this opinion.

Whole Court sitting.

Chief Justice Tilford and Judge Harris dissenting.