## District Board of Tuberculosis Sanitarium Trustees for Fayette County v. City of Lexington.

(Decided November 20, 1928.)

J. B. JOHNSON, HUNT, NORTHCUTT & BUSH and R. J. COL-BERT for appellants.

WILLIAM H. TOWNSEND, GUY A. HUGUELET and JAMES PARK for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming in part and reversing in part.

This appeal presents some interesting and important questions of constitutional law affecting the validity and construction of several acts of the General Assembly relating to the establishment, erection, and maintenance of a tuberculosis sanatorium for Lexington and Fayette county. In 1912 the Legislature created the Kentucky Board of Tuberculosis Commissioners, conferred upon it prescribed powers, and delegated to it defined duties coextensive with the state. The ultimate objects to be obtained were, so far as possible, the eradication of tuberculosis and the education of the general public to the end that the ravages of that disease might be mitigated and confined. The commission was directed to study the subject, gather and disseminate information respecting the causes, cure, and prevention of the malady, and to combat it in every way that science could devise. The

several objects of the act were definitely declared. An appropriation of $15,000 was made to be available to the commission immediately upon the passage of the act and a like amount annually upon the 1st day of July thereafter. Ways and means were provided for the creation of districts, purchase of sites, construction of buildings, and the maintenance thereof. A system of government for the districts was provided, and appointment of members of the governing boards was authorized. A district might consist of a single county or of two or more contiguous counties, if all consented thereto. If composed of a single county, its fiscal court was required to make a levy to yield revenue sufficient to meet the annual expenses of maintaining the institution. If composed of more than one county, the expense of construction and administration was to be prorated between them in proportion to the taxable property of each county, and the fiscal court of each was required to make an annual levy sufficient for this purpose. The fiscal court of any county was empowered to create a sanatorium district within the county. If it failed to act, a referendum to the people was permitted on a petition of twenty or more voters. If the vote was favorable, it became the mandatory duty of the fiscal court to establish a district and to appropriate out of the county funds a sum sufficient to acquire a site, and to make a tax levy sufficient to build and maintain the institution. Likewise the fiscal courts of several contiguous counties might take separate concurrent action to establish a district, or, upon their failure to act, a similar referendum might be had on the petition of 10 per cent. of the voters of each county composing the district, and, if a favorable vote was cast in each of the counties, it became the duty of the fiscal courts of such counties to establish and maintain such district. Upon the creation of the district, the Kentucky Board of Tuberculosis Commissioners were to recommend to the county judge in a district composed of a single county or to the several county judges in a district composed of more than one county the names of certain persons from which to select the district board of trustees. In a single county these were to be seven in number. In a district comprising several counties these were to consist of not fewer than two nor more than four persons from each county, with the further provision that in any county having a population of 20,000 there was allowed an additional trustee for each 10,000 persons in excess of that figure.

This board was constituted a body corporate and given all the powers necessary to carry into effect the purposes of the act, and all sums collected by taxes for sanatorium purposes were directed to be appropriated by the fiscal court, and to be paid by the treasurer to the secretary of the board. Indigent patients should be admitted first. If the free patients did not exhaust the capacity of the institution, other patients could be admitted and treated at their own expense, but no greater number of patients could be admitted to the institution than could be treated and taken care of properly. No free patient could be admitted without a certificate from the county judge of the county of his residence, in substance and to the effect that such applicant was unable to pay for his treatment and maintenance in the institution. Acts 1912, pp. 353-372, Ky. Stats., secs. 4711b-1–4711b-28, inclusive. This short summary of the act is not exhaustive, but it is sufficient to indicate its scope, character and purpose.

The fiscal court of Fayette county declined to establish a sanatorium district. The referendum provision of the act was utilized, and, at the election in November, 1913, the voters required the fiscal court to establish such a district consisting of the entire county, which was accordingly done. A site was selected and approved in accordance with the act, and acquired and paid for by voluntary donations, without waiting for the fiscal court to raise the necessary funds by taxation. The fiscal court erected some buildings out of public money and began the operation of the institution. A donation of $12,000 by Madeline Harriet McDowell was used to add a building for children. In 1924 the act was amended, but still required the fiscal court by annual levy to maintain the institution, and required the state to pay 50 cents per day for each free tuberculosis patient treated and cared for in such sanatorium. The amendment transferred the duties theretofore imposed on the board of tuberculosis commissioners to the state board of health, a board composed of eight members appointed by the Governor from lists submitted to him by each of the various schools of medicine, and provided, as before, for the appointment of the district board by the county judge. On April 8, 1924, Leo J. Marks entered into a contract with the district board, which provided that he would donate $125,-000 for its purposes, if given the right to nominate two trustees, and with certain other conditions not necessary to be recited. The General Asesmbly of 1926 passed an

act (chapter 159, Acts of 1926) providing, in substance, that any one who donated $100,000 or more to such a sanatorium district should have the right to nominate or disignate two additional members of the board of trustees, to be appointed by the county judge from a list furnished by the donor. The act further expressly authorized the board to accept gifts on the conditions specified therein. The validity of that act was upheld by the lower court, and it is not now assailed. The gift of Marks has been completed and the buildings erected, but appellant is unable to operate it for lack of funds, although the applications of many patients needing care and treatment are on file and their treatment necessarily deferred. At the same session the General Assembly passed another act (chapter 155), for the purpose of meeting the expenses necessary for the establishment and maintenance of a district tuberculosis sanatorium in a district containing a city or cities of the second class, providing that, when a sanatorium was established in such county, the fiscal court of such county was authorized, empowered, and directed to levy a tax not to exceed 6 cents and not less than 3 cents on each $100 of taxables in such county, and the general council or board of commissioners of the city was authorized, empowered, and directed to levy a tax not to exceed 8 cents and not less than 6 cents on each $100 of taxables in said city. The sums derived from the levies by the city and county were to be paid over to the board of trustees for the operation and maintenance of the institution. Provision was made to the effect that, if the levies in the year exceeded the expense of maintenance, the levy for the ensuing years should be reduced accordingly.

The circuit court held that chapter 155 of the Acts of 1926 was invalid; that chapter 159 of the Acts of 1926, and chapter 111 of the Acts of 1912, as amended by chapter 106 of the Acts of 1924, were valid and should be construed to require the fiscal court to provide funds by taxation and pay the board's operating expenses and the maintenance of the sanatorium as conducted in the buildings constructed by the fiscal court, but that the fiscal court was under no duty to provide operating expenses or maintenance for the buildings acquired by donations and erected upon the tuberculosis site. The district board of tuberculosis sanatorium trustees for Fayette county appeals, insisting that chapter

155 is valid, and that the county and city should be required to maintain the donated buildings. Fayette county has taken a cross-appeal, insisting that the acts of 1912 and 1924 should be so construed as to give it absolute and uncontrolled discretion in the matter of maintenance even as to the buildings it has erected; and that, if otherwise construed, the act would in effect vest the district board with the power of levying taxes, and for that reason should be held invalid.

In questioning the validity of a statute or construing the language of the Constitution, courts proceed with great caution. "We must never forget," said Chief Justice Marshall, in McCulloch v. Maryland, 4 Wheat. 407, 4 L. Ed. 579, "that it is a Constitution we are expounding." In similar spirit we must always remember that we are construing, not constructing, a Constitution, and that whoever assails as unconstitutional an act of the General Assembly, where the legislative power of the people is reposed, labors under the burden of placing his finger on the section or provision of the Constitution which the act violates. Com. v. Goldburg, 167 Ky. 96, 180 S. W. 68; Shanks v. Howes, 214 Ky. 613, 283 S. W. 966; Rhea v. Newman, 153 Ky. 604, 156 S. W. 154, 44 L. R. A. (N. S.) 989; Morgan v. Goode, 151 Ky. 284, 152 S. W. 584; Board of Trustees v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606. The Constitution as written has been construed by this court, and that construction accepted and acquiesced in for many years, is as much a part of the instrument as if it had been written into it at its origin. Douglas v. Pike County, 101 U. S. 677, 25 L. Ed. 968; McChesney v. Hager (Ky.) 104 S. W. 714. The Legislature may pass any act not forbidden expressly or by necessary implication, by the Constitution of the commonwealth. Johnson v. Fordson Coal Co., 213 Ky. 445, 281 S. W. 472. The Constitution does not grant the power that the Legislature may exercise, but the latter may exercise all legislative power not interdicted by the Constitution.

On the other hand, the Constitution is the palladium of our liberties and civil rights and the courts should not hesitate to condemn any legislation that expressly or by necessary implication conflicts with that instrument. Guided by these elementary rules, we will consider the questions raised in their order.

The storm center of the litigation is over the validity of chapter 155 of the Acts of 1926, which is first attacked as being in violation of sections 181 and 181a of the Constitution. Those sections directly forbid the General Assembly from imposing taxes for the purposes of any county, city, town, or other municipal corporation, but authorize that body by general laws to confer on local authorities the power to assess and collect taxes for such purposes. As construed by this court, the restrictions thus imposed do not apply to matters of state-wide importance in which there is also a local interest, but do apply to matters of purely local concern, and to matters of state concern in which the municipality as a political unit is not directly interested or recognized. Thus we have held that the Legislature may fix the minimum and maximum tax rate for the support of the public schools in a municipality, and require these to be levied by the city council; the rule being based on the principle that public education is not a municipal function but a matter of state concern and control which the state may regulate either directly or through agencies of its selection. City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411. A city of the first class may be authorized to establish a pension fund for retired policemen on the ground that the state is interested in the protection of the lives and property of its citizens and the safeguarding of the public peace, and this is promoted by maintaining a stable police force. Board of Trustees v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606. The county may be required to pay one-half of the expenses of maintaining its incorrigible children between certain ages which it sends to the house of reform, Lang v. Com., 190 Ky. 29, 226 S. W. 379, and to pay a certain sum toward the employment of a county farm agent for the education and advancement of its citizens in agriculture, Hendrickson v. Taylor County, 196 Ky. 75, 244 S. W. 82; a county may be required to pay the fees of a local registrar for recording vital statistics, Furlong v. Darnaby, 206 Ky. 63, 257 S. W. 707, second appeal, 216 Ky. 475, 287 S. W. 913—all of these being matters of both state and local concern falling within the police powers of the state. Conversely, the state cannot require a municipality to contribute to a purely state institution, such as the establishment of an armory, Com. v. Sparks, 201 Ky. 5, 255 S. W. 859, nor require a city to contribute to the salary

of a county officer, Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791.

Clearly the eradication of disease and the preservation of the public health is a public purpose and a matter of state-wide, as well as of local concern, and a proper subject of legislation. 12 R. C. L. 1264; 29 C. J. 6; Com. v. Goldburg, 167 Ky. 96, 180 S. W. 68; Hahn v. City of Newport, 175 Ky. 186, 194 S. W. 114; City of Louisville v. Coulter, 177 Ky. 247, 197 S. W. 819, L. R. A. 1918A, 811. Hence the constitutional provisions, supra, do not inhibit the Legislature in the exercise of the police power from creating tuberculosis districts and authorizing the construction and maintenance of sanatoria by the counties and cities in which they are located. Cities of the second class are so empowered by section 3058-1, Ky. Statutes. It may be desirable for such a city and county in which it is located to act jointly in such matters. Perhaps under existing legislation this may be done in counties having a city of the second class by mutual consent and upon terms agreeable to both. It certainly may be done by mutual consent when authorized by specific legislation. Hunter v. City of Louisville, 199 Ky. 834, 252 S. W. 119. But such action is entirely different from that here attempted, as here there is a district composed of a single county and there is no pretense of establishing a sanatorium for the benefit of several political subdivisions; the vital question in this case being as to whether the city of Lexington may be taxed for the purpose of a purely county institution, and that tax in effect levied by the fiscal court of the county. This feature distinguishes the present case from those cited supra, in which similar legislation was upheld.

It will be observed that the preceding acts of which the present act is amendatory make no reference to cities or any taxing units other than counties. Under those acts a county district is established by the fiscal court or by voters of the county. By virtue of such action a sanatorium is required to be constructed, maintained, and administered under the provisions of the act for the benefit of the people of the county, and by the county. While authorized by the Legislature, under the police power, this is certainly a county institution. The county boundary is the territorial limit of the district, and by inference the county is the taxing unit. If the district is composed of two or more counties, it is established by

the mutual consent of those counties acting separately through their fiscal courts or by their voters. In such case the territorial limit is enlarged and the expense of construction and maintenance is prorated between the various counties of the district in proportion to their taxable wealth and the same rate of taxation required of each, the several counties remaining the unit of taxation. The act of 1926 here assailed makes no change in these provisions, nor in the provision admitting applicants to the sanatorium only upon certification of the county judge. Its only purpose is to require the city to assist in the support of the sanatorium. The county tax rate is fixed at not less than 3 cents nor more than 6 cents and that of the city at not less than 6 nor more than 8 cents on the $100 of taxables, so that, under the minimum rate, the urban citizens of the county pay 9 cents while the rural residents pay only 3 cents on the $100 of taxables toward an institution established, controlled, and conducted by the county. These levies are fixed by the fiat of the fiscal court in establishing the district; the action of the city in making the levy being purely perfunctory, at least to the extent of the minimum rate. The city is not accorded any political rights. It has no voice and practically no representation, except it is permitted to select two of the eleven members of the district board, an innocuous gesture. Its financial condition is not considered, and it is given no opportunity to protest. Its people are accorded no privileges or benefits except such as they receive from the county, so that as a political subdivision, it cannot be said that the city is at all interested in the institution. Clearly this is in violation of both the letter and the spirit of the constitutional provisions, supra.

As said in Campbell County v. City of Newport, supra:

"The Legislature under sec. 181a may exercise the authority expressly granted and confer on counties, cities, towns and other municipal corporations the power to assess and collect taxes for themselves, but it cannot delegate to one municipality or taxing district the power to tax another or confer on one political subdivision the authority to lay any kind of a burden upon another, unless the municipality or taxing district so burdened is a part of the territory in which the larger subdivision may levy a uni-

form tax. In such cases the grant of power to the larger municipality to assess property and levy taxes within the territorial limits thereof includes of course its right to assess property and levy taxes in all parts of the territory, although there may be in such territory smaller municipalities or taxing districts. When, however, such a tax is laid, it must be uniform upon all the property in the territory levying the tax.''

It is also obvious that the act imposes double taxation upon the citizens of the city, and in that respect conflicts with the uniformity provisions of section 171 of the Constitution. We have seen that the sanatorium is a county institution established and controlled by county agencies. In a district composed of a single county, the county is the geographical and political unit of the district. Logically it is the taxing unit of the district, as it not only determines whether the district shall be established, but also, if it decides in the affirmative, its action arbitrarily creates an obligation upon and fixes a minimum tax rate for both municipalities for the support of the institution; the city rate being three times as high as the rural rate on the same taxables. Certainly this constitutes double taxation in its most pronounced form. Cooley on Constitutional Limitations, vol. 1, p. 394; McElroy v. Walsh's Trustee, 133 Ky. 103, 106 S. W. 240, 117 S. W. 398; C. T. & T. Co. v. Hopkins, 121 Ky. 850, 90 S. W. 594, 28 Ky. Law Rep. 846; Campbell County v. City of Newport, supra.

It is argued, however, that the county and city are distinct governmental divisions existing in a tuberculosis district, and that the Legislature may select each of them as a taxing unit and require the governmental authorities of each to levy a tax for the support of a sanatorium without violating constitutional provisions, notwithstanding the city rate may be higher than the county rate, and the urban resident is required to pay taxes therefor to both municipalities and the rural resident to but one. This argument might apply to some situations, but its fallacy as applied to this case lies in the implied assumption that the city as a governmental division is interested in the sanatorium which we have seen is a county institution, and in which the city has no political rights whatever, and from which its people derive no benefit save such as they receive as citizens of the county.

In this respect the city bears the same relationship to the sanatorium as does a graded school district or other similar taxing district of Fayette county. And it will hardly be contended that the fiscal court could be authorized to levy a tax upon such districts for the support of that institution independently of the one it levies upon the county as a whole.

The provisions relating to taxation of both municipalities appear in the same sentence of the act. They are closely connected and interwoven, and it cannot be said that the Legislature would have enacted either in the absence of the other. As the one relating to city taxation must be held invalid, the chancellor did not err in holding the act void in its entirety. This leaves the other acts mentioned supra in force and to be construed.

Section 6 of the Act of 1912 and section 1, subd. 3, of the Act of 1924 provide that the fiscal court of the county declared to be a taxable district shall make "a levy for the maintenance of such sanatorium, and shall annually thereafter make a levy of sufficient amount of tax to pay the annual expenses of maintenance of said institution." Fayette county claims that it is liable only for the expenses incurred in the maintenance of the buildings constructed by it and of the care of such patients as are treated therein and that it has unlimited discretion as to the amounts it shall levy for that purpose. Conversely the district board insists that the expense of maintenance of buldings erected out of donated funds and the care of patients therein treated are to be paid by Fayette county, and the amount of this is to be determined by the district board.

In support of the first proposition it is urged for the county that, when the people of Fayette county voted to establish a sanatorium district, it was understood that the sanatorium was to be built and maintained only by levies within the discretion of the fiscal court, and that this did not embrace buildings erected by donations. While forcible, we are not convinced by the argument. The people were not voting on means of construction or maintenance, or methods of management, but for the establishment of an institution to render an enduring public service with the knowledge that the power of change was in the General Assembly. Larue v. Redmon, 168 Ky. 487, 182 S. W. 622. So long as the necessity of the institution exists, it may be maintained and legisla-

tion respecting it is subject to change by the power that created it. The institution to be maintained is not only the buildings that the fiscal court caused to be erected by it, but the sanatorium as a whole. Trustees of Ky. Females Orphan Home v. City of Louisville, 100 Ky. 470, 36 S. W. 921, 19 Ky. Law Rep. 1916, 40 L. R. A. 119. The building is not such an institution as is contemplated in these acts. The institution comprehends the corporate entity embracing all of this property wheresoever situated or in whatever form it may be, including all the elements of an organized and going concern, by performing the functions of its creation and fulfilling the purpose of its existence. The duty of maintenance is not performed so long as there is lacking anything necessary and proper in the conduct and creation of the institution. It must have beds, bedding, medicines, food, nurses, physicians, and perhaps many other things. Corbin Y. M. C. A. v. Com., 181 Ky. 384, 205 S. W. 388, 1 A. L. R. 264.

When buildings are erected by donations, the public is benefited, and public policy dictates that they should be accepted and maintained. It is consistent with the express terms and purposes of the Legislature to accept such donations and to relieve to that extent the burden of the taxpayers. It is the duty of the county to make necessary levies required to properly maintain the institution, to the end that it may subserve the purpose which induced the people to establish it.

In construing the words of the act quoted supra, with reference to the discretion and powers of the fiscal court in the case of District Board of Tuberculosis Sanitorium Trustees v. Bradley, etc., 188 Ky. 426, 222 S. W. 518, we said:

> "The governing authority of the sanatorium was vested in its trustees, and these were without authority to require the fiscal courts to appropriate the sums it should designate for its needs, and the fiscal courts had discretion in fixing the appropriation to the needs of the institution."

That case turned on another point, and the language quoted may be said to be dicta, but nevertheless it reflected the views of the court and is persuasive. The Legislature has not fixed the rate of taxation, nor has it attempted to confer that power upon the district board. (Its power to do so we need not discuss.) Obviously this is left to the discretion of the fiscal court. It may not re-

fuse to act nor arbitrarily refuse to provide sufficient funds for the proper maintenance of the institution, and we have no doubt that it will co-operate with the high purpose actuating the public-minded citizens interested in this great movement and accord to the board charged with its administration the full measure of its support. We need not now determine what action, if any, may be taken by the district board nor by a neglected indigent party, if it fails in the discharge of this duty. It follows that the chancellor ruled rightly in sustaining the validity of chapter 159 of the Acts of 1926, and in holding that chapter 155 of the Acts of 1926 was invalid. He erred in restricting the duty of the fiscal court to a levy of taxes sufficient to raise an amount properly to maintain the buildings erected by the county, and also erred in holding that such amount is to be determined by the board of trustees of the tuberculosis district.

Wherefore the judgment is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.

Whole court sitting.

Chief Justice Clay and Judge Willis dissenting.

OPINION BY JUDGE WILLIS, DISSENTING IN PART.

I dissent from the decision of the court in so far as it holds unconstitutional chapter 155 of the Acts of 1926, and fails to define the duties of the city and county with respect to the maintenance of the institution. The majority opinion fairly and fully states the facts and history of the case, and I proceed at once to a consideration of the constitutional questions involved.

Chapter 155 of the Acts of 1926 is held invalid on the grounds that it offends sections 171, 181, and 181a of the Constitution of the state.

■ Sections 181 and 181a forbid the General Assembly from imposing taxes *for the purposes* of any county, city, town, or other municipal corporation. The same sections authorize the General Assembly to confer on the local authorities the power to assess and collect taxes for purely local purposes. The extent of the taxing power to be delegated to the governmental subdivisions, even for local purposes, is left to the Legislature. When the act in question is properly understood, it will be seen that sections 181 and 181a have no application to it. The

Legislature has not attempted to levy taxes for the purposes of any county, city, town, or other municipal corporation. It has directed, empowered, and authorized the county and city to levy taxes annually for the maintenance of an institution for the promotion of the public health. The protection of the health of the people is of state-wide concern, as well as vital to each particular governmental unit. The health of the people, as Disraeli remarked, is the foundation of the power, progress, and prosperity of the state. In matters that serve a state-wide purpose and subserve a local need, the General Assembly is free to legislate, and the limitations of sections 181 and 181a of the Constitution do not apply. The state itself may act on such subjects and at the same time require action by the local agencies of the government, such as cities and counties. McDonald v. City of Louisville, 113 Ky. 429-438, 68 S. W. 413, 24 Ky. Law Rep. 271.

In the City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411, this court said:

"Section 181 of the Constitution refers to matters municipal. The State could as well have required the schools of Jefferson County, including Louisville, to have been under the supervision and control of the county fiscal court, and that body required to levy a fixed tax, or one between minimum and maximum rates, as have left the tax rate with the city council. The section in question does not pertain to municipal affairs, nor does it attempt to levy a tax therefor. It is competent for the State to administer its government through such agencies as the Legislature may choose, when the Constitution does not expressly provide otherwise."

Cf. City of Louisville v. Board of Education, 154 Ky. 316, 157 S. W. 379.

The principle was first applied to taxation for the support of public schools, but it has likewise been applied to statutes for the encouragement of agriculture (Carman v. Hickman County, 185 Ky. 630, 215 S. W. 408; Hendrickson v. Taylor County Farm Bureau, 196 Ky. 75, 244 S. W. 82), the collection and preservation of vital statistics (Furlong v. Darnaby, 206 Ky. 63, 257 S. W. 707, second appeal, 216 Ky. 475, 287 S. W. 913), the enforcement of state law (Duke v. Boyd County, 225 Ky.

112, 7 S. W. (2d) 839), and for certain expenses in the operation of the House of Reform, as it affected particular counties (Lang v. Com., 190 Ky. 29, 226 S. W. 379).

It is plain that taxes may be levied for any public purpose, and, if the purpose is not purely local, but within the police power of the state as well, the Legislature may direct the governmental agencies in their respective limits to levy and collect taxes therefor. The preservation of the public health is a public duty, and one of the undisputed sources and subjects of the police power of the state, as is conceded in the majority opinion.

The case of Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791, is cited in support of the present decision. The opinion in that case clearly states what it decided. It was decided that Campbell county could not recover from the city of Newport a portion of the expense it had incurred in maintaining a juvenile court, "first because the suit was an attempt on the part of Campbell county to impose a tax on the property of the citizens of Newport without their consent, and, second, because it was an attempt to lay a tax on a part of the property of the county while exempting other like property in the county from the payment of the tax." It was not denied in that decision, but, on the contrary, it was declared, that the Legislature had power to establish juvenile courts for counties as well as cities and to authorize the county and city to levy a tax for the purpose of maintaining it. Cf. Furlong v. Darnaby, 206 Ky. 63, 257 S. W. 707, Id., 216 Ky. 475, 287 S. W. 913. In Duke v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839, it was held that the General Assembly could constitutionally compel a county to pay a fixed fee to a city policeman for the performance of a service to the commonwealth in the enforcement of the state law.

The fundamental fallacy in the majority opinion, as I view it, lies in the assumption that the tuberculosis sanatorium is a purely county institution. This is illustrated by the statement that "the vital question in this case being as to whether the city of Lexington may be taxed for the purpose of a purely county institution, and that tax in effect levied by the fiscal court. This feature distinguishes the present case from those cited, supra, in which similar legislation was upheld." Again the majority opinion says "the county boundary is the ter-

ritorial limit of the district and by inference the county is the taxing unit.'' The sanatorium, in my judgment, is not a county institution. It would be more accurately described as an independent institution of the state, established and maintained for a proper public purpose, of both local and state-wide concern. Such institutions may be supported by the state, or the state may require governmental agencies benefited by the services rendered by the institution, such as cities and counties where it is located, to contribute to its support and maintenance. That the county is not necessarily the sole taxing unit is clearly apparent. The circumstance that the county boundary describes the territorial limit of the district does not make it a county institution. When the district is composed of more than one county, such is not the fact. The county and the sanatorium district are separate entities, although the boundaries sometimes coincide. Separate institutions may exist within the same territorial limits. A corporate entity is a thing apart from a geographical boundary, although the latter defines the territory within which the former performs its functions. Whitt v. Wilson, 212 Ky. 281, 278 S. W. 609.

There are two taxing units or governmental agencies, invested with the power to tax, situated within the territorial limits of the same sanatorium district. One is the county of Fayette and the other is the city of Lexington. One is no more the exclusive taxing unit for the support of the district than the other, unless the Legislature makes it so. It has precisely the same right to require the city to levy a tax for the institution that it has to require such action by the county. If the Legislature has no power to compel the city to levy a tax, by a parity of reasoning it could not require the county to do so. But the decisions cited in the majority opinion clearly sustain the right of the Legislature to require either or both of the governmental agencies possessing the power of taxation to exercise that power on behalf of the state institution known as the tuberculosis sanatorium. I think the authorities and the reasoning that underlies them compel the conclusion that chapter 155 of the Acts of 1926 is not invalid by reason of anything contained in sections 181 or 181a of the Constitution or arising from the implications of those provisions. Nor do I believe that the authorities cited can be put aside or answered by saying that the tuberculosis sanatorium is a county institution,

when in fact it is created and conducted under the authority of the state for the protection of the public health —an object that affects directly both the state at large and the local communities where it is maintained. It appears to me that it is distinctly and typically an institution created for the exact character of public service contemplated by those cases.

■ Section 171 of the Constitution provides, in substance, that taxes shall be levied and collected for public purposes only and shall be uniform upon all property of the same class *subject to taxation within the territorial limits of the authority levying the tax.* The majority opinion proceeds upon the assumption that the sole authority levying the tax is the county of Fayette. It is said that double taxation results because all the property in the city of Lexington is subject to taxation for the same purpose in the same year against the same owner by both the city and the county. The fallacy of the assumption appears when the facts are rightly understood. The tax is not levied for the city by the fiscal court, but by the legislative board of the city. The tax is levied for the county by the fiscal court and is uniform upon all property of the same class within the county which is the authority levying the tax, and it is levied and collected but once each year. It is levied and collected for a public purpose under direct authority of the General Assembly. The authority levying the tax in the city of Lexington is its legislative board, and the tax is levied but once each year for a public purpose, and is uniform upon all property of the same class within the city. It is likewise levied under direct authority of the General Assembly. This exact question was dealt with in the case of City of Louisville v. Commonwealth, 134 Ky. at page 497, 121 S. W. 413, where it was said:

> "Section 171 of the Constitution requires that taxes must be uniform and assessed against all property within the territorial limits of the authority levying the tax. It is argued for appellant that, if the Legislature is levying this tax, it is not uniform upon all property within its authority, and that the city cannot be said to be levying the tax, because the city is left no discretion in the matter. Treated on its broader ground, we think the section was aimed to equalize the burden of taxation upon the subjects paying it and to be benefited by it. . . .

"But, if it be preferred to rest the matter upon the narrow ground—that is, whether the levy of the tax was made by the municipality—we think it can be done. The Legislature may and does provide for much of the State government through agencies such as counties and cities. . . . That the city or county is mandatorily required to levy a specific rate is not more objectionable as an infringement of power than if they were simply required to levy at some rate in their discretion. If the State can adopt an agency for carrying on some part of the government, it may delegate to the agency the power to do what is required of it. If it may delegate discretionary power, it may likewise delegate the power shorn of the discretion, as the latter is less than the former. It is not denied that the State can limit the rate of taxation in all these matters as to the maximum. So it can limit it as to the minimum. It is wholly discretionary with the Legislature, where the Constitution is silent upon the subject."

The majority opinion says that double taxation results upon the citizens of the city when they are taxed by the county and also by the city for the support of a single institution. But that does not constitute double taxation within any definition or delimitation that can be discerned in section 171 of the Constitution. The majority opinion, on this branch of the case, proceeds upon the same erroneous assumption heretofore indicated. It says:

"We have seen that the sanatorium is a county institution established and controlled by county agencies. In a district composed of a single county, the county is the geographical and political unit of the district."

The whole disagreement arises from confusion respecting the unit exercising the authority to levy a tax. The unit of taxation under the act in question is not the state or the sanatorium district. One unit of taxation selected by the General Assembly in this instance for raising a part of the revenue required is Fayette county, represented by the fiscal court, which has power to levy taxes for the entire county, and that, of course, includes the city of Lexington, which is wholly within that county.

But the tax levied by the county is uniform, within constitutional limits, and pursuant to statutory authority. The other governmental unit chosen by the Legislature for the purpose of raising funds by taxation is the city of Lexington. Its legislative board levies the tax upon all property within that unit, within constitutional limits, and pursuant to the same statutory authority. Both taxes are uniform and equal upon all property within the limits of the authority levying the tax, and in literal and exact obedience to section 171. In paying his city taxes, the city taxpayer merely bears his portion of the city's burden. In paying the county tax, he contributes his share of the county's burden, and therefore, pays for another taxing authority. He is subject to two separate governmental authorities, each of which may lawfully levy a tax for a public purpose, and he is under like obligation to pay the taxes levied by each unit. That both taxes are required to support an institution of the state does not make it double taxation or taxing one man twice for the same purpose. He is taxed once to raise the city's cotnribution, and he is taxed again to raise the county's contribution, but both contributions are necessary to maintain the institution.

When considered in this light, and such is the true light as I see it, it is plain that the act does not infringe section 171 of the Constitution, but literally accords with it. The difference in the rate of levy required of the city and of the county does not destroy uniformity. There is no requirement of uniformity of taxation among governmental units. Each agency is free and independent of the other and unaffected by the duties, burdens or obligations of the other as such. A citizen of each unit owes like loyalty and support to each, and he may not escape his obligations to either by discharging them as to the other. One governmental unit or agency may not be heard to complain that another one has been granted more power or subjected to lesser burdens than are granted to or imposed upon it. Reasonable discrimination that works no injury is not condemned, where no provision of the Constitution is offended. 12 C. J. 1151; City of Louisville v. Com., 134 Ky. 488, 121 S. W. 411; Hunter v. City of Louisville, 199 Ky. 834, 252 S. W. 119.

Different rates in raising revenue may be applied in separate units of taxation, and classification based on reasonable distinctions is authorized by the Constitution.

The classification of cities in this state is a reasonable basis for the exercise of the police power of the state [Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460], and for the application of the powers of taxation. Indeed, it appears that there may be broader powers of classification in matters of taxation than in some other fields of legislation. Citizens' Tel. Co. v. Fuller, 229 U. S. 322, 33 S. Ct. 833, 57 L. Ed. 1206; Magoun v. Ill. Trust & Savings Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19; Associated Producers' Co. v. Board of Sup'rs, 202 Ky. 538, 260 S. W. 335; Swiss Oil Corporation v. Shanks, 208 Ky. 64, 270 S. W. 478, affirmed 273 U. S. 407, 47 S. Ct. 393, 71 L. Ed. 709; Middendorf v. Goodale, 202 Ky. 118, 259 S. W. 59; Metropolitan Life Ins. Co. v. City of Paris, 138 Ky. 801, 129 S. W. 112; Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367.

It is true that the sanatorium district is the unit of service and describes the territorial limits from which the patients may.be received, but it is in no sense a unit of taxation or governmental subdivision with authority to tax. Its governing authority is a mere administrative board for the execution of a governmental purpose. The amount of money required to maintain the institution is determined, not by the district board or by the fiscal court, but by the necessities of the case. It depends upon the number of patients provided for and treated at the institution. If there are a great many patients, the maintenance expense will be commensurately large corresponding with the service supplied. Although the district board is authorized to receive and disburse public funds, it is responsible for the faithful discharge of its duties, and there is no prohibition in the Constitution against the appointment of an administrative board for such purposes. Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828.

The duty of the governmental agencies to provide funds is measured by the necessities of the situation and the extent of the affliction. Provision must be made annually to meet the conditions existing. If the number of patients become so large that the levies will not take care of them, further admittance to the institution must be denied until further provision can be made.

The majority opinion says the levy required of the city would constitute double taxation in its most pro-

nounced form. In Commonwealth v. Walsh's Trustee, 133 Ky. 103, 117 S. W. 398, cited in support of the statement, the court dealt with taxation by the Legislature alone, which was in no respect similar to the case here. In C. T. & T. Co. v. Hopkins, 121 Ky. 850, 90 S. W. 594, 28 Ky. Law Rep. 846, also cited to the same point, the court held an ordinance of the city of Eminence invalid under section 171 because it authorized the city to tax the same privilege twice for the same year as against the same owner. The case is obviously dissimilar. In both cases a single sovereignty asserted a right to tax twice in the same year the same property against the same owner, while exempting other property. In Campbell County v. Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791, is found a discussion of double taxation, and it is made perfectly clear that double taxation in the invidious sense, means taxing twice for the same purpose in the same year *by the same taxing authority,* part of the property in the territory in which the tax is laid without taxing all of it. There can be no double taxation in violation of the uniformity clause of the Constitution by reason of separate levies by distinct authorities.

The majority opinion concedes that the city and county could, by mutual consent and upon terms agreeable to both, if authorized by legislative authority, establish and maintain a joint tuberculosis sanatorium. Hunter v. City of Louisville, 199 Ky. 834, 252 S. W. 119. Undoubtedly the concession accords with sound doctrine, but, as was said in the Louisville case (134 Ky. 488, at page 498, 121 S. W. 411, 413), if the Legislature "may delegate discretionary power" to a city or county, "it may likewise delegate the power shorn of the discretion, as the latter is less than the former."

The long line of opinions following that one established the doctrine that, if the General Assembly may authorize the cities and counties to perform certain functions, it has a right to require them to take action for proper public purposes not interdicted by the supreme law. Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460.

It is said that the institution is called into existence by the action of the county or its inhabitants, and that the city is not accorded any political rights or representation. It is also said that the city is accorded no privileges or benefits except such as it receives from the county, and as a political subdivision it cannot be seen

that the city is at all interested in the institution. In so far as chapter 155 of the Acts of 1926 is concerned, the same thing could be said of the county. The county is not accorded any political rights or representation not equally accorded to the city; and, as a political subdivision, the county is not interested in the institution. All the county does under the act is to levy and collect a tax which is then paid to the district board. And the act directs the city to do exactly the same thing. The city is represented on the district board in the same way the county is represented. The institution in question was established before the act in question was passed, and now the city exercises as much authority concerning it as does the county. It is the people of the city as well as those of the county that are benefited by the work of the institution. So far as the potential patients are concerned, their rights are fixed by two facts, namely: That they be indigent and afflicted, and residents of the district. The people as a whole, considered either as residents of the city or county, are directly benefited by the removal of the afflicted from among them, and by the eradication of the dread disease, or at least by its concentration, restriction, and mitigation. It is the general benefit to the community as a whole, and not the rights of particular individuals to the service, that affords the foundation of the power and duty of the government to impose the burden of taxation. It is entirely beside the point to say that the power of the General Assembly is conditioned on any consent of the city or county or on any special benefit to them as political units. The primary power to legislate does not depend upon the permission of those upon whom the legislation may operate. The essential consent was given when the people reposed in the General Assembly the legislative power.

It must not be forgotten that the Legislature is the supreme lawmaking power in the state, circumscribed only by express constitutional limitations, and, when it acts within the scope of its power, the local governmental units, as well as the people, are bound by its action.

I think chapter 155 of the Acts of 1926 is constitutional and valid, and that the fiscal court and the city of Lexington are required to make levies for the tuberculosis sanatorium in accordance with the act; but, if the act is held invalid, then I think it necessarily follows that the fiscal court is under the whole duty of maintaining

the institution, and should make a tax levy sufficient to maintain it and provide the hospital service for all those afflicted people who, under the law, may be entitled to it.

I am authorized to say that Chief Justice Clay concurs in this dissent.