# Miller v. State Building Commission.

October 12, 1948.

A. E. Funk, Attorney General, and M. B. Holifield, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

### The Federal Act.

The Congress of the United States enacted a law known as Public Law 725, 79th Congress, Chapter 958, 2nd Session, 42 U. S. C. A. sec. 291 et seq., entitled "An Act To amend the Public Health Service Act to authorize grants to the States for surveying their hospitals and public health centers and for planning construction of additional facilities, and to authorize grants to assist in such construction." In order to carry out the purposes of the Act the Congress appropriated $3,000,000 to remain available until expended. This sum and future sums to be appropriated are to be allocated to the respective States on the basis of the ratio of their population to the population of the United States and the amount of the grant from the Federal Government to each approved project is limited to one third of the cost thereof, it being contemplated that the remaining costs of each project will be met by the state and local governments or by private donations. All grants made under this Act must be approved by the Surgeon General of the United States upon application from the States. To obtain this approval of a state application, it is necessary that the State (1) designate a single state agency as the sole agency for carrying out such purposes; (2) provide for the designation of a state advisory council concerned with the construction and operation of hospitals and to consult with the state agency for carrying out such purposes; (3) provide for making an inventory and survey containing all information required by the Surgeon General and for developing a program to carry out the purposes of the Act; (4) provide that the state agency will make such reports containing such information as the Surgeon General may reasonably require. The Act is long and goes into detail but the above resume is sufficient for our purposes in this opinion.

### The State Acts.

In order to enable the State of Kentucky to receive the benefits of Public Law 725 and to meet its requirements for obtaining its share of the grants thereunder, the General Assembly at its regular session in 1948 enacted Senate Bill 197, Chapter 189, Acts of 1948.

The Act established a Division of Medical Hospitals and related services in the Department of Health which, among other duties and powers, was authorized to accept and receive on behalf of the State any grants, gifts or contributions now or hereafter made by the Federal Government or from any other source to the State to aid in carrying out the provisions of Public Law No. 725 or other Acts for the same or similar purposes, which funds shall be placed in a revolving fund to be disbursed by the Commissioner of Health with the approval of the Commissioner of Finance. This newly created division was authorized to receive applications for construction of hospitals and medical centers and transmit same to the Surgeon General of the United States; to appoint an advisory council in accordance with the provisions of Public Law No. 725 and to make such regulations as were necessary to carry out the provisions of said law. The Act appropriated $30,000 to the Department of Health for the 1948-49 biennium to carry out the purposes of the Act.

At the same 1948 session the General Assembly enacted Senate Bill No. 342, Chapter 237, Acts of 1948, creating the Kentucky Building Commission for the purpose, among others, of authorizing, approving and supervising the expenditure of state funds for certain state agencies and institutions for capital outlay. That Act appropriated $10,000,000 for the purposes of the Act and, among other purposes for which this fund was authorized to be expended by the Commission, was "for matching funds for hospital construction under any law now existing or that may be passed by the National Congress."

### The Present Suit.

This suit was filed in the Franklin Circuit Court by George B. Miller, a citizen and tax payer, against the Kentucky Building Commission and the members who compose it, and the State Treasurer of Kentucky, seeking an injunction to restrain the members of the Kentucky Building Commission from allocating any funds authorized to be expended by it to give financial aid to counties, cities or towns that wish to construct publicly owned hospitals for local purposes and to enjoin the State Treasurer from paying out any of said fund for

said purpose or for paying out any of the appropriation authorized by Chapter 189, Acts of 1948, for such purposes. Demurrer to the petition and amended petition was sustained and plaintiff declining to plead further a judgment was entered dismissing his petition. From that judgment this appeal is prosecuted.

### The Questions Involved.

There appear to be two questions involved, (1) does the General Assembly have the authority under the Constitution to appropriate any sum of money to the newly created Division of Medical Hospitals in the Department of Health for the purpose of protecting and promoting the health of the general public by making studies and surveys of needed medical hospital and related services, for disseminating such information as will aid in providing the facilities to meet the needs found to exist and for other purposes heretofore set out such as were necessary to implement the Federal Act—Public Law No. 725? (2) May the Kentucky Building Commission out of the funds appropriated to it to expend, "for matching funds for hospital construction under any law now existing or that may be passed by the National Congress," allocate funds to assist in building and equipping hospitals under the provisions of the Federal Act—Public Law No. 725?

### I.

To the first question it would appear that there could be but one answer. No allocation or appropriation is made under Senate Bill No. 197, Chapter 189, Acts of 1948, to any specific project or to build or equip any hospital or medical center that might be erected under the provisions of the Federal Act. It simply appropriates $30,000 to a division of the Department of Health, a long existing department of the State Government to enable it to conduct surveys for the location of these hospitals, to receive contributions from the Federal Government and other sources with which to build them, to counsel and advise communities seeking aid in the construction of these hospitals and to receive and transmit applications to the federal authorities for approval, to enable the Department of Health to appoint an advisory council to co-ordinate the Federal Aid Program and to enable the department to employ

such personnel as is necessary to carry out the provisions of the Act. The small appropriation provided for in Chapter 189, Acts of 1948, is in the nature of a routine appropriation to the Department of Health for public health purposes and if the Kentucky Building Commission or any other department of the State Government never allocates a dollar toward the erection or equipment of a single hospital under the Federal Act, the appropriation under the State Act, Chapter 189, would be justified and can be sustained as a public health measure. Since the Legislature may exercise all power not forbidden by the Constitution and since there is no provision in our Constitution that would prohibit an appropriation for the purposes set out in the Act, we have no hesitancy in upholding its constitutionality and the appropriation included therein for the purposes therein shown.

## II.

The other question involved presents a somewhat more serious problem. Bearing in mind the fundamental principle of our system of State Government that our Constitution is not a grant of powers to the Legislature but that the Legislature has plenary and inherent powers to legislate on matters not forbidden by some provision of the Constitution, it becomes our duty to examine Chapter 237, Acts of 1948, in the light of any constitutional provision with which the section being interpreted might be in conflict. Is there any provision of our Constitution which would prohibit the Kentucky Building Commission, created for the purpose of expending capital outlays under its direction, from expending and allocating under its direction and out of its appropriation money "for matching funds for hospital construction under any law now existing or that may be passed by the National Congress" and specifically Public Law No. 725 involved in this suit?

The only provision of the Constitution cited and relied on by appellant as being contravened by the section of the Act in question is Section 181, the pertinent part of which reads as follows:

"The General Assembly shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, but may, by general laws, confer on

the proper authorities thereof, respectively, the power to assess and collect such taxes. * * *''

Cases construing this portion of the section quoted above have been in those instances in which the Legislature has authorized or required a municipality to levy a tax within certain limits to support some institution or governmental activity operated by the municipality. Examples of this are Board of Trustees of Policemen's Fund v. Schupp, 223 Ky. 269, 3 S. W. 2d 606, 609, which involved a legislative act which authorized cities of the first class to levy a tax for the purpose of creating a pension fund for policemen; District Board of Tuberculosis Sanitarium Trustees for Fayette County v. City of Lexington, 227 Ky. 7, 12 S. W. 2d 348, which involved a legislative act which authorized and directed the fiscal court of Fayette County and the council of the City of Lexington to levy certain taxes for the support of a Tubercular Hospital which had been established in the district under the provisions of the act; Board of Trustees Newport Public Library v. City of Newport, 300 Ky. 125, 128, 187 S. W. 2d 806, 809, in which was involved the question whether the Legislature may require a municipality to levy a certain tax to support a public library owned and operated by the municipality. The decision in these cases turned on whether the particular activity involved was a purely municipal matter of only local concern or one in which the general public of the State was interested. Cities and counties cannot be required to levy taxes for the former but can be for the latter.

Appellee cites and relies on all the above cases to sustain questions involved in this litigation. A careful reading of these cases shows clearly they are not in point and affect the question here involved only indirectly. It is clear that neither of the legislative acts involved in this case authorizes or seeks to impose a tax on any city, county or district as was true in the above cases. It is contemplated that part of the costs of erecting and equipping the hospitals provided for under the Federal Act will be borne by local units composed of cities, counties and other municipal corporations and if in the future when these hospitals shall have been erected, a city, county or municipality fails to meet its requirements of support and the Legislature then imposes a tax on that local unit for support of its hospital, the

questions decided in the above cases will become relevant. They are not in point on the main question here involved.

But appellant contends, and not without some reason, that Section 181 of the Constitution is susceptible of another construction than that which we have placed upon it in the above cases and other similar cases in which was involved the question of the authority of the Legislature to require a county, city or other municipal corporation to impose taxes on itself for its own purposes, whether for public or local purposes. He contends that the language of Section 181 which says "The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation" means that a General Assembly may not impose taxes on the State as a whole and then out of the general fund provided by these taxes make an appropriation for the purposes of a county, city or other municipal corporation. He therefore argues that the General Assembly cannot through a direct appropriation nor by a grant through an administrative agency, such as the Kentucky Building Commission, allocate to a county, city or other municipal corporation any part of the fund which was appropriated to that agency under Chapter 237, Acts of 1948.

We think that must depend upon the nature of the purpose for which the money is appropriated or the fund is allocated. If such fund is to be used for a purely local purpose affecting only the inhabitants of the particular municipality, clearly it could not be done. On the other hand if it is one in which the general public and the State at large are concerned, it may be done. In the latter case the State is but appropriating or allocating to a county, city or other municipal agency funds to assist it in carrying out the purposes which, but for the action of the local unit, the State itself might have to provide. This distinction between matters of a local nature and those in which the public at large is interested is well illustrated and the cases construing Section 181 in a somewhat analogous situation are fully collected and analyzed in Board of Trustees, Newport Public Library v. City of Newport, 300 Ky. 125, 187 S. W. 2d 806, 809, to which reference is hereby made. In that case it was held that a public library inured to the benefit of

the State at large rather than to the local interest of the City of Newport alone.

We think it cannot be questioned that a hospital, affecting as it does the health of the people, is a matter of public concern of a state-wide interest. As was said by this court in the case of District Board of Tuberculosis Sanitarium Trustees for Fayette County v. City of Lexington, 227 Ky. 7, 12 S. W. 2d 348, 351::

"Clearly the eradication of disease and the preservation of the public health is a public purpose and a matter of state-wide, as well as of local, concern, and a proper subject of legislation."

It is a matter of common knowledge that when a hospital is built its activities are not confined to the immediate community in which it is located. It serves patients from communities far away and provides emergency hospitalization to travelers injured in accidents occurring in its locality. Communicable diseases and epidemics, once started, are not confined to the city and and county in which they originate but have a tendency to spread and may affect the lives and health of the whole State or large sections thereof.

The scarcity of qualified physicians and surgeons necessary to prevent and arrest disease and to rehabilitate the physical and mental defects of the people is a problem of increasing concern in Kentucky. There are counties in the rural section of the State with only one or two physicians to serve their large and scattered population. There is no question but that modern equipped hospitals, staffed with qualified nurses and technicians, not only add to the efficiency of the doctors but enable them to vastly increase their capacity to meet the physical needs of the sick and afflicted. The enactment by the Federal Congress of Public Law No. 725 to meet this situation, which exists not only in Kentucky but in the whole nation, and its offer to contribute up to one third of the cost of the erection and equipment of these hospitals presents an opportunity by the national, state and local governments to correct the conditions now existing by a co-operative effort which diffuses the financial burden and makes possible a great advance in the improvement of the health and general welfare of our people. We are of the opinion that neither Sec-

tion 181 nor any other section of the Constitution forbids this allocation of state funds as the State's contribution to this public purpose of state-wide interest and concern, and we so hold.

### Limits of State Participation.

Under Public Law No. 725 federal aid may be given to any non-profit hospitals which furnish their facilities to all persons regardless of race or color and which may include hospitals operated by religious and fraternal organizations. Whether State assistance may be granted to such hospitals we do not decide because that question is not involved in this appeal. The record in this case involves only hospitals and medical centers that may be erected by counties, cities, towns or other municipal corporations such as a hospital district, that is, those of a public nature operated by a state or local unit of government and we do not in this opinion go beyond such cases.

### Conclusion.

After a careful consideration of the record we are of the opinion that the judgment of the lower court is correct and it may be and is hereby affirmed.

Judgment affirmed.