## Kentucky Bldg. Commission et al. v. Effron.

May 20, 1949.

A. E. Funk, Attorney General, M. B. Holifield, Assistant Attorney General, Bullitt, Dawson & Tarrant, John E. Tarrant, Robert T. Burke, Sr. and Thomas S. Dawson for appellants.

Hensley & Redwine for appellee.

Opinion of the Court by Chief Justice Sims—Reversing.

This is a declaratory judgment action brought by Julius Effron, as a taxpayer, against the Kentucky Building Commission and its several members, the State Treasurer, the Commissioner of Health and Division of Medical Hospitals and Related Services in the Department of Health, to test the constitutionality of KRS 211.105 and KRS Chapter 47, Part Three, which latter authorizes the allocation of funds raised by taxes to nonprofit hospitals not owned by the State or a political subdivision thereof. A general demurrer to the petition as substituted and amended was overruled, the defendants refused to plead further, and the chancellor adjudged KRS Chapter 47, Part Three, was unconstitutional insofar as its provisions apply to hospitals which are not owned and operated by the State or one of its subdivisions.

The 79th National Congress enacted Public Law No. 725, 42 U. S. C. A. sec. 291 et seq., for the declared purpose "to assist the several States to construct public and other nonprofit hospitals," and appropriated three hundred million dollars of federal funds for the purpose. Section 291i(g) of that Act defined a nonprofit hospital as "any hospital owned and operated by a corporation or association, no part of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual."

To enable Kentucky to take advantage of the benefits of the Federal Act and to protect the general public

health, our General Assembly at its 1948 session enacted KRS 211.105 which created a "Division of Medical Hospitals and Related Services in the Department of Health" which was authorized "to accept and receive on behalf of the state any grants, gifts or contributions now or hereafter made by the Federal Government, or from any other source, to the Commonwealth of Kentucky to a'd and assist in carrying out the purposes and provisions of Public Law No. 725, * * * or any other Acts for the same or similar purposes * * *." And to "counsel and advise counties and communities seeking aid in the construction of hospitals and medical centers and related serv'ces, as provided in Public Law No. 725 * * *, receive applications for such aid and transmit same to the Surgeon General of the United States of America for approval."

In the same 1948 session, our General Assembly enacted KRS Chapter 47, Part Three, which appropriated ten million dollars to be expended among other purposes in "matching funds for hospital construct'on under any law now existing or that may be passed by the National Congress." The Kentucky Building Commission upon the recommendation of the Division of Medical Hosp'tals and Related Services allotted State funds for new construction by cities and counties of certain public hospitals. Such allotments were held to be constitutional in Miller v. State Bldg. Commission, 308 Ky. 249, 214 S. W. 2d 265. Upon the same recommendation the Commiss'on also allotted State funds for new construction of certain nonprofit hospitals, such as J. N. Norton Memorial Infirmary, Hayswood Hospital, and Our Lady of Peace Hospital, which are public hospitals but not owned or operated by the State or any subdivision thereof. The instant action attacks the constitutionality of KRS 211.105 and KRS Chapter 47, Part Three, in allotting funds raised by taxation in the construction of these hospitals.

The petition questions the right of the State under secs. 3, 5, and 171 of our Constitution to make allotments from funds raised by taxes to these nonprofit hospitals. Although such allotments were not attacked as being violative of sec. 181 (forbidding the General Assembly from levying a tax for any political subdivision), the

chancellor held they were. He was in error in this, since it was expressly said in the Miller opinion, 308 Ky. 249, 214 S. W. 2d 265 that sec. 181 does not prevent the allocation of State funds as the State's contribution to public hospitals in which there is statewide interest and concern.

It is clear that sec. 3 of the Kentucky Constitution (no exclusive grant of public emoluments or privileges shall be made except in consideration of public services) has no application to the question before us, since the construction of nonprofit hospital facilities is a public purpose. District Board of Tuberculosis Sanitarium Trustees v. City of Lexington, 227 Ky. 7, 12 S. W. 2d 348; the Miller case, 308 Ky. 249, 214 S. W. 2d 265. It is well settled that a private agency may be utilized as the pipe-line through which a public expenditure is made, the test being not who receives the money, but the character of the use for which it is expended. 51 Am. Jur., sec. 390, p. 381; Hager v. Kentucky Children's Home Society, 119 Ky. 235, 83 S. W. 605, 67 L. R. A. 815; Orphan Society of Lexington v. Fayette County, 69 Ky. 413; Robinson v. Mercer Fiscal Court, 218 Ky. 452, 291 S. W. 721. Since the construction of these nonprofit hospitals is for the common good of all people throughout the State, the appropriations of tax money for building them do not violate the applicable part of sec. 171 of our Constitution—"Taxes shall be levied and collected for public purposes only."

This leaves us to dispose of the more difficult question raised by sec. 5 of our Constitution. That section guarantees religious freedom and among other things says: "No preference shall ever be given by law to any religious sect, society or denomination." The character of hospitals now under consideration, such as the Norton Infirmary and Our Lady of Peace, are controlled and governed by boards of certain religious faiths; the Norton's Board of Trustees are Episcopalians and the latter's Board are Catholics. But the hospitals are open to the public of all creeds and faiths—and even to those who profess no certain religious belief. Religion is not taught in these hospitals nor is any one sect given preference over another. The fact that members of the governing boards of these hospitals, which perform a recognized public service to all people regardless of faith

or creed, are all of one religious faith does not signify that the money allotted the hospitals is to aid their particular denomination. On the contrary, the governing boards of such hospitals are but the channels through which the funds flow. Courts will look at the use to which these funds are put rather than the conduits through which they run. If that use is a public one and is calculated to aid all people in the State, it will not be held in contravention of sec. 5 merely because the hospitals carry the name or are governed by the members of a particular faith. 51 Am. Jur. sec. 349, p. 393.

The first amendment to the Federal Constitution provides: ''Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'' The framers of the Kentucky Constitution in writing sec. 5 into our Bill of Rights, ''No preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity,'' followed closely the Federal Constitution. It was their evident purpose, in the language of Thomas Jefferson, to build ''a wall of separation between Church and State'' which had been so firmly erected in the Federal Constitution. Manifestly, the drafters of our Constitution did not intend to go so far as to prevent a public benefit, like a hospital in which the followers of all faiths and creeds are admitted, from receiving State aid merely because it was originally founded by a certain denomination whose members now serve on its board of trustees.

In their inception, hospitals were charitable organizations sponsored by religious sects which owned and operated them. In recent years the National and State Governments have enacted much social legislation in an endeavor to relieve charitable institutions in caring for the sick and afflicted and to let the governments assume the burden of operating hospitals as a public service from the State to its citizens. Recognizing that these institutions were in existence and were being operated efficiently through °their own boards, the Federal and State Governments have thought it more practical to aid them rather than to build new ones. Certainly, it was never the intention of the framers of sec. 5 of our Constitution to prevent the State from aiding with mon-

ey raised by taxes an institution rendering a public service merely because the governing body of the institution is composed of one denomination.

Sherrard v. Jefferson County Board of Education, 294 Ky. 469, 171 S. W. 2d 963 has no bearing on sec. 5. It was there held that public school funds could not be used for the transportation of children attending private or parochial schools, since sec. 189 of our Constitution forbids the use of any taxes levied for educational purposes from being appropriated in aid of any private, sectarian or denominational schools. In Nichols v. Henry, 301 Ky. 434, 191 S. W. 2d 930, 168 A. L. R. 1385, it was written that the expenditure of money from the general fund in the transportation of all school children in the primary grades did not violate sec. 5 of our Constitution because the classification necessarily included Catholic children attending parochial schools.

We will not take the time and space necessary to discuss other cases cited and relied upon by appellee, such as Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673; City of Corbin v. Louisville & N. R. Co., 233 Ky. 709, 26 S. W. 2d 539; Williams v. Board of Trustees Stanton Common School District, 173 Ky. 708, 191 S. W. 507, L. R. A. 1917D, 453, and Caudill v. Pinson, Mayor, 233 Ky. 12, 24 S. W. 2d 938. It will suffice to say that an examination of these authorities shows they are not controlling on the questions before us and each of them is easily distinguished from the case at bar.

The judgment is reversed with directions that one be entered which is in conformity with this opinion.