## WOLFE v WILLIAMS

Ohio Appeals, 5th Dist, Tuscarawas Co

Decided April 20, 1936

Adolph Unger, Canton, and Norman E. Clark, Canton, for appellant.

Wilkin, Fisher & Limbach, New Philadelphia, for appellee.

## OPINION

By SHERICK, J.

Henry Wolfe, an incompetent person, under guardianship for his estate in the

Probate Court of Tuscarawas County, filed an application therein for termination thereof which that court denied upon final hearing. A motion for a new trial was thereafter filed and subsequently overruled. Thereafter on December 13, 1935, an appeal was perfected to the Court of Common Pleas, wherein a paper styled a petition on appeal was filed and demurred to by the appellee. The Court of Common Pleas considered these papers as upon a motion to dismiss the appeal for want of jurisdiction, and on March 24, 1936, dismissed the appeal. This is the final order from which appeal on a question of law is prosecuted to this court.

The appeal to the Court of Common Pleas is predicated upon the authority of §10501-56, GC. The appellee maintains that this section is not pertinent but that the appellant's right of appeal is governed by §10501-62, GC. A further significant fact is made to appear by the Probate Court's certificate attached to the transcript of that court, wherein it is recited in part that the probate judge presiding possessed the qualifications of the judge of the Court of Common Pleas, and that a complete record was made of the proceeding in the Probate Court. The sole question presented by the appeal to this court is whether §10501-62, GC, is unconstitutional. It is claimed by the appellant that this section is repugnant to §26 of Article II of the Ohio Constitution, which prescribes that "All laws, of a general nature, shall have a uniform operation throughout the state." It is also urged that the section is violative of the constitutional provision of "due process of law." We do not find it necessary to pass upon the second claim.

Sec 10501-56, GC, was enacted into law on April 10, 1931, (114 Ohio Laws, 320), as a part of the new Probate Code which became effective on January 1, 1932. The purpose of this section, which provides in part, that: "Appeal may be taken to the Common Pleas Court, by a person against whom it is made, or whom it affects, from any order, decision or judgment of the Probate Court * * *; from an order removing or refusing to remove an executor, administrator, guardian, assignee, trustee or other officer appointed by the Probate Court; * * *" was to afford a remedy by appeal, as well as a right to review upon error theretofore existing by virtue of §12241, GC.

There can be no question that §10501-56, GC, created a right of appeal in such case to the Court of Common Pleas and gave that court jurisdiction thereof on appeal. This act is unquestionably of a general nature and has a uniform operation throughout the 88 counties of the state.

On April 4, 1935, the Legislature enacted the present Appellate Review Act (116 Ohio Laws, 104). Its effective date was January 1, 1936. It will be noted that this Act repeals §12241, GC, heretofore noted, and by §12223-3, GC, thereof prescribes, that:

"Every final order judgment or decree of a court and, when provided by law, the final order of any administrative officer, tribunal, or commission may be reviewed as hereinafter provided, unless otherwise provided by law, except that appeals from judgments of Probate Courts and of justices of the peace upon questions of law and fact shall be taken in the manner now provided for in §§10501-56 to 10501-61, GC, inclusive, and §§10382 to 10398, GC, inclusive, respectively."

It is apparent therefrom that the Appellate Review Act is in fact a re-enactment of §10501-56, GC, a section of the new act on probate practice. It is rather unexplainable that the Legislature within forty days after the passage of the Appellate Review Act, did, on May 14, 1935, enact §10501-62, GC (116 Ohio Laws, 385, 404). The effective date thereof being September 2, 1935. The section provides that:

"If a judge of a Probate Court who has the qualifications provided by law for judges of the Court of Common Pleas, provides for the taking of a complete record at any hearing upon any matter before such Probate Court so that a bill of exceptions, or a complete record, may be prepared as provided by law in Courts of Common Pleas, there shall be no appeal to the Court of Common Pleas, in any such case; but an appeal may be prosecuted to the Court of Appeals in all matters within its jurisdiction in the manner provided by law for the prosecution of other appeals to said court."

By employment of the term "unexplainable," we mean that the members of this court are unable to understand why this section was enacted without any reference to §§10501-56 and 12223-3, GC. It is especially significant that the effective date of §12223-3 GC is four months later than the effective date of §10501-62 GC. As statutes do not ordinarily speak as of the date of passage, it must follow that the

breath of life awakes them into being on their effective date. If it was imperative to decide the force of §10501-62, GC, on the strength of the unfavored rule of repeal by implication we would incline to the view that §12223-3, GC, was last in point of time, antagonistic to §10501-62, GC, and responsive to the rule fixed by §10501-56, GC; rather than to hold that §10501-62, GC, limited and restricted the jurisdiction of Courts of Common Pleas as prescribed by §§10501-56 and 12223-3, GC.

If we look to the title of §10501-62, GC, "Appeal from Probate Court," and the last phrase thereof, a strong and not illogical inference arises that the section was perhaps intended by the scrivener to be amendatory of the Appellate Review Act. Assuming this to be true, the definition of the word "appeal" as found therein in §12223-1, GC, is "construed to mean all proceedings whereby one court reviews or retries a cause determined by another court," and keeping in mind that the Appellate Review Act, seeks to abolish all distinctions between the old remedies of appeal and error; and repeals §12241, GC, which provides for review upon proceedings in error; and provides for review of such cases by §§12223-3 and 10501-56, GC, then it would further naturally follow if §10501-62, GC, governs, that at the present time one may not appeal his cause to the Common Pleas Court of Tuscarawas County "in any such case" because §10501-62, GC, says that appeals may not be had as the present encumbent of the Probate Court office has the qualifications of a Common Pleas judge as fixed by §1532, GC. At the expiration of his term, however, his successor might not possess such qualifications, for §10501-1, GC, prescribes the qualifications for a probate judge which are not so stringent. One might not appeal such a case on February 8, 1939, but on the next day such an appeal would be countenanced. A litigant might possess the right one day and not possess it the next, all within the time allotted him within which to perfect an appeal.

And further considering the force of the word "appeal" as used in §10501-62, GC, it would embrace appeals on questions of law and fact, and also on questions of law purely. If this be true, then the appellant had only a right to appeal to this court in either event for right of appeal is denied him to the Court of Common Pleas by the statute. It is made mandatory that the Common Pleas Court be passed over, for jurisdiction is denied it. The result would be inevitable

in this case that appeal could only be had to this court upon questions of law. There could be no trial de novo in this court, for the reason that the action is purely a statutory one, unknown to equity prior to the adoption of the constitutional amendment in 1912. §6 of Article IV of the Constitution prescribes this court's jurisdiction, and as said in Foraker v Perry Township Rural School Bd. of Edn., 130 Oh St, 243, 199 NE, 74, decided since the enactment of the Appellate Review Act, wherein it reasserts its prior holdings, that, "the legislature has not the power to limit or enlarge the jurisdiction thus conferred." The title and last portion of §10501-62, GC, is of no force or effect and is but an idle gesture declaratory of this court's jurisdiction conferred by the people's constitution to review the proceedings of any court of record on questions of law and on questions of law and fact where the same are equitable in character as heretofore understood.

One further thought in passing; that portion of §10501-62, GC, which has to do with the requirement that appeal may not be had when a complete record or bill of exceptions is or may be available seems a poor excuse for denying an appeal. If appeal is allowable as written in §10501-56, GC, then the fact that a record was made in the Probate Court, cannot restrict the trial on appeal in the Court of Common Pleas for one has a right to a trial de novo in a reviewing court on questions of law and fact when the cause is an equitable one. A record or bill of exceptions is not a prerequisite to such a review.

Now has §10501-62, GC, a uniform application throughout the state? It is said by the appellee that it has. It is said that it now applies to nearly half the counties of the state; that it applies to no specifically named counties but to a group of counties; that the list will or may be constantly or automatically shifting by death, appointment and election. It would eternally behoove counsel and litigant in any such case in most or all of the counties of the state to make diligent inquiry of the encumbent probate judge as to the extent of his qualifications, whether he was admitted to the bar and if so, had he been admitted for a period of six years. He might have a right of appeal in one county and his neighbor across a county line road with a like cause of action would have no such right. Even in one's own county he might have the right one day and not the next. This surely cannot be a general law of Common Pleas Court jurisdiction with a uniform

operation throughout the state. Jurisdiction is not made to depend upon the office, but upon the encumbent's qualifications and if a record is made available.

It has long been a rule of statutory construction that: "The constitutionality of an act under said section 26 (§26 of Article II of the State Constitution), is determined by the nature of its subject matter, its operation and effect, and not by its form only."

This is the expression of the court as found in Hixson v Burson, 54 Oh St, 470, 479, 43 NE, 1000. A like rule of construction is found in State v Hipp, 38 Oh St, 199, and Friend v Levy, 16 Oh St, 26, 50, 80 NE, 1036.

It is conceded, as it well may be, in view of the third paragraph of the syllabus of State ex Dalton v Ritchie, 97 Oh St, 41, 119 NE, 124, wherein it is declared that: "all laws or parts of laws relating to the jurisdiction of the Common Pleas Court are laws of a general nature, and must have uniform operation throughout the state."

The question before us is therefore narrowed to that of whether or not §10501-62, GC, has a uniform operation throughout the state. It is claimed by the appellee that inasmuch as jurisdiction is not denied to Courts of Common Pleas of certain specific named counties that its application is not limited in operation. We cannot follow the logic of this argument. It has been held in this state that the failure to name a specific political unit is not conclusive of the uniform application of a general act, but that its operation and effect is to be considered in determining if the act is general or limited in its scope. We have previously stated the manner in which this section may operate in some counties at a given time and not act in others. Let us now examine the legislative authority as found in constitutional provision for the enactment of such a law limiting the jurisdiction of certain Courts of Common Pleas in their respective counties.

It is prescribed in §4, of Article IV of the State Constitution, that: "The jurisdiction of the Courts of Common Pleas, and of the judges thereof, shall be fixed by law." The jurisdiction of Courts of Probate is granted by §8 of the same Article. It provides, that: "The Probate Court shall have jurisdiction in probate and testamentary matters * * * and such other jurisdiction, in any county, or counties, as may be provided by law." When these sections are con-

sidered in their proper relation to §26 of Article II, it becomes apparent that there is constitutional authority conferred upon the Legislature to establish unequal jurisdiction upon Probate Courts of the various counties of the state. But it is equally clear that no such authority is made to extend to unequal jurisdictional legislation to be conferred upon Courts of Common Pleas. Any such right must be found within the instrument itself. It is significant that these three constitutional provisions were in no respect changed by amendment in 1912. It therefore follows that any construction placed upon these provisions prior to 1912 is equally now applicable and controlling. (Emphasis ours).

It is not the purpose, intent or effect of §10501-62, GC, to confer jurisdiction upon Probate Courts, but to withhold jurisdiction from Courts of Common Pleas in certain instances and to confer further jurisdiction on Courts of Appeals. Hence, the constitutionality of §10501-62, GC, must be gauged not from a consideration of probate jurisdiction but from the mandates found in §§4 and 6 of Article IV.

This matter was first considered by the Supreme Court in Kelley v State, 6 Oh St, 269, where it is held on page 273, that: "Nor does it follow as a necessary conclusion that because the jurisdiction of the Probate Court may be more extensive in one county than in another, the jurisdiction of the Court of Common Pleas must also differ in extent. The latter may be uniform and the former not."

The only real point of difference in the Kelley case from that of the one now before this court is in that there was therein attempted to be granted to certain Courts of Common Pleas, a further jurisdiction which others did not possess; while in the instant case jurisdiction is sought to be withdrawn from certain Common Pleas Courts provisionally. §10501-62, GC, seeks to restrict the uniform operation of §10501-56, GC. It is just as vicious as if the latter section had been intended to operate only in certain named counties and not in others.

The Kelley case finds approval in Hixson v Burson, supra, see page 480. In State ex D'Alton v Ritchie, supra, the court considered a law which had for its purpose the reposing of certain jurisdiction in one of its judges of the Court of Common Pleas to the exclusion of its other judges. The court commented upon, approved and followed the Kelley case. Judge Donahue, speaking for the court, said:

594

"If this provision means that the jurisdiction conferred is exclusive only of the jurisdiction of the juvenile court or a juvenile judge or judges of the juvenile court, then perhaps it does not offend against §26 of Article II of the Constitution; but if this language must be construed to divest the Common Pleas Court of Lucas County of the jurisdiction conferred by laws of general nature upon the Common Pleas Courts of this state, then this provision of the act is unconstitutional and void."

The principle announced in the Kelley case was again approved of in Meyer v Dempsey, Trustee, 62 Oh St, 637, 58 NE, 1100, and Hess v Devou, 112 Oh St, 1, 146 NE, 311. The last authority is particularly applicable to this controversy. It was there attempted by virtue of §1558-26, GC, a part of the Municipal Court Act of the city of Cincinnati, to place a limitation upon §12241, GC, now repealed and hereinbefore commented upon, so that error might not be prosecuted from the Municipal Court to the Court of Common Pleas where the judgment entered was less than three hundred dollars. Upon the reason and precedent herein employed, that court held in the third paragraph of the syllabus, that:

"The General Assembly is not empowered by special legislation to take away from the Court of Common Pleas in any county any of the jurisdiction conferred by §12241, GC."

Neither is it empowered under the guise of general legislation which acts specially in specific instances to divest the Courts of Common Pleas of conferred general jurisdiction in some counties and leave it undisturbed in others. The Kelley case is again found sound in reason and principle in Brown v State ex Merland, Taxpayer, 120 Oh St, 297 (307), 166 NE, 214.

The appellee suggests two cases, Gentsch v State ex McGorray, 71 Oh St, 151, 72 NE 900, and State ex Stanton, Pros. Atty. v Powell, 109 Oh St, 383, 142 NE, 401; but when these are examined, it will be noted that the judgment entered in the Gentsch case is made to depend upon a fair classification of cities. The statute involved had to do with the opening and closing of the polls in cities of over 300,000. The law was held general and uniform. We are of opinion that if this case were now before the court that the judgment would be otherwise, for as pointed out in Elyria v

Vandermark, 100 Oh St, 365, 126 NE, 314, §1 of Article XVIII of the Constitution adopted in 1912, now forbids classification of municipalities other than cities and villages. In State v Powell, §1558, GC, was involved. It provided for the choosing of a chief justice of the Court of Common Pleas in those counties having more than one Common Pleas judge. The law was held general and uniform and correctly so, for, as pointed out, §1558, GC, but imposed additional duties upon an existing office. The court also stated that the Kelley, Meyer and Ritchie cases, supra, all related to jurisdiction of the court, and that "the provisions of this law relate solely to matters of administration, and not in the remotest degree to the jurisdiction of the court."

It is our judgment that §10501-62, GC, in its entirety is repugnant to §26 of Article II, and §§4 and 6 of Article IV of the Ohio Constitution and in conflict with §10501-56, GC, in that its purpose and effect are to restrict the uniform operation thereof. §10501-62, GC, is therefore unconstitutional and void.

The judgment is reversed and cause remanded to the Court of Common Pleas for trial.

Judgment reversed.

LEMERT, PJ, and MONTGOMERY, J, concur.